NORFOLK AND WESTERN RAILWAY COMPANY v. WERNER INDUSTRIES, INC.

No. 6

(Filed 26 November 1974)

1. Indemnity § 2— indemnity for nonnegligent acts or omissions — validity of agreement

Indemnity provision in which a contractor agreed to indemnify a railway for any liability which the railway incurred for property damage or personal injury caused by or resulting from any acts or omissions of the contractor or its employees, whether the acts or omissions were negligent or not, is not against public policy when the contract is private and not connected with the public service of a public service corporation.

2. Rules of Civil Procedure § 56— motion for summary judgment — burden of proof

A party moving for summary judgment has the burden of establishing the lack of any triable issue of fact by the record properly before the court even when such party does not have the burden of proof at trial.

---

Railway Co. v. Werner Industries

---

3. **Rules of Civil Procedure § 56— motion for summary judgment — showing of lack of triable issue — burden of opposing party**

When a movant for summary judgment carries the burden of showing the lack of a genuine issue of material fact, the burden shifts to the opposing party to show that there is a genuine issue for trial as required under Rule 56(e) or to provide an excuse for not doing so under Rule 56(f).

4. **Indemnity § 3— action on indemnity agreement — genuine issue of material fact — credibility of defendant's employee**

In a railway's action to recover, under defendant contractor's agreement to indemnify the railway for any liability which the railway incurred for property damage or personal injury caused by "any acts or omissions, negligent or otherwise," of defendant or its employees, a sum which the railway paid to defendant's employee for injuries suffered when the employee was struck by an unloading ramp while working at the railway's automobile unloading facility, defendant movant for summary judgment carried the burden of showing the lack of a genuine issue of material fact where the affidavit of defendant's employee established that the injury was due to a malfunction of an electrical switch on the ramp, the repair and maintenance of which was the responsibility of the railway, and that the accident was thus not caused by an act or omission of defendant contractor or its employee; however, affidavits presented by the railway which contradict the employee's assertion that the accident resulted from a faulty switch and permit the inference that the employee has falsified the cause of his injury raise an issue of credibility sufficient to defeat defendant's motion for summary judgment and advance the case to trial.

Chief Justice BOBBITT not sitting.

Justice LAKE did not participate in the hearing or decision of this case.

ON *certiorari* to review the decision of the Court of Appeals, 21 N.C. App. 116, 203 S.E. 2d 321, upholding judgment of *McConnell, J.,* 9 July 1973 Session, FORSYTH Superior Court.

This is a civil action to recover $6,027.00 under the terms of an indemnity agreement between Norfolk and Western Railway Company (Norfolk) and Werner Industries, Inc. (Werner).

Norfolk alleged in its complaint, in pertinent part, that:

1. On or about 1 November 1969 Norfolk and Werner entered into an indemnity agreement, a copy of which is attached to the complaint as Exhibit A and incorporated by reference, providing that Werner's employees were to unload motor vehicles from Norfolk rail cars and perform specified functions incident thereto in return for payment as specified in the agreement.

2. Paragraph 7 of that agreement reads as follows:

"7. Contractor agrees to indemnify and save harmless Norfolk from and on account of injury to any person or persons, including death, as well as damage to or loss of property, or claims in connection therewith, caused by or resulting from any acts or omissions, negligent or otherwise, of Contractor or any of Contractor's Trucker's agents, servants or employees in the performance of the services herein undertaken; and any injury to Trucker's agents, servants or employees, including death, occurring on premises of Railway, when such injury or death is not the result of acts or omissions of Trucker, and whether or not such agent, servant, or employee is performing services covered under this agreement at time of such injury or death."

The word "contractor" as used in the indemnity agreement means Werner Industries, Inc.

3. On or about 15 February 1971 Jerry S. Boyles, an employee of Werner, was injured while working at Norfolk's automobile unloading facility. Said facility is owned by Norfolk but under the terms of the agreement Werner is responsible for the actual unloading of the automobiles.

4. On 3 May 1971 Boyles sued Norfolk in the Superior Court of Surry County for $20,000.00 damages for the injuries he suffered as a result of the accident.

5. After protracted settlement negotiations with Werner in which Norfolk requested indemnification under the terms of the agreement, all without success, Norfolk effected a settlement with Boyles in the amount of $6,027.00. Boyles executed a release and his action was dismissed with prejudice. Norfolk has repeatedly demanded that Werner indemnify it but Werner has willfully and wrongfully refused to do so.

Norfolk says that by reason of the matters alleged it is entitled to judgment against Werner for $6,027.00, with interest and costs, to indemnify the plaintiff for the amount expended in settling the claim of Jerry S. Boyles.

In its answer, Werner admits execution of the agreement with the indemnity provisions contained in Paragraph 7 but denies that Werner has incurred any liability thereunder.

Defendant asserts:

1. The indemnity provision contained in Paragraph 7 of the agreement between plaintiff and defendant indemnifies plaintiff *only* "from and on account of injury to any person or persons . . . caused by or resulting from any acts or omissions, negligent or otherwise," of Werner.

2. Boyles was an employee of Werner and the injury to Boyles "was caused solely by the negligence of the plaintiff Railway and not the defendant Contractor. When Boyles filed action for personal injuries against the plaintiff herein, he alleged that his injuries were caused by the negligence of the Railway in failing to maintain in a proper state of repair a certain unloading ramp which was operated by an electrical control device and in failing to warn Boyles that said device was not functioning properly." Boyles' complaint and Norfolk's answer reveal that no defense or contributory negligence on the part of Boyles was pleaded by the Railway; and no acts of Werner, negligent or otherwise, were pleaded by the Railway as the cause of Boyles' injuries.

3. The indemnity provision upon which Norfolk grounds this action does not purport to indemnify Norfolk for loss occasioned by its own negligence.

4. The provision for indemnity was drafted by Norfolk and is meaningless, uncertain, ambiguous, and unenforceable because it fails to define the term "Contractor's Trucker's agents, servants or employees" or the term "Trucker's agents, servants or employees."

Werner moved for summary judgment under Rule 56 of the Rules of Civil Procedure with supporting affidavit of Jerry S. Boyles and Norfolk's answers to certain interrogatories concerning Norfolk's ownership and responsibility for the repair and maintenance of the unloading ramp. Norfolk filed opposing affidavits of W. D. Mason, Jr., Byron D. Williams and L. L. Callahan, Jr. Upon consideration of the pleadings, affidavits, answers to interrogatories, the briefs and arguments of counsel, the trial judge, being of the opinion that there was no genuine issue of any material fact, allowed the motion and entered summary judgment for Werner. Norfolk appealed and the Court of Appeals affirmed, Baley, J., dissenting. Norfolk petitioned for review under G.S. 7A-30(2), and we allowed certiorari.

*Craige, Brawley by C. Thomas Ross for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by William F. Womble, Jr., and Allan R. Gitter for defendant appellee.*

·HUSKINS, Justice.

The sole question presented by this appeal is whether the Court of Appeals erred in affirming the trial court's order granting summary judgment in favor of defendant.

Principles applicable to summary judgment under Rule 56 of the Rules of Civil Procedure are discussed in *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971), and have been applied in various cases by this Court, including *Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793 (1972); *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972); *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972); *Schoolfield v. Collins,* 281 N.C. 604, 189 S.E. 2d 208 (1972); *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *McNair v. Boyette,* 282 N.C. 230, 192 S.E. 2d 457 (1972).

Rendition of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The record in this appeal consists of pleadings and exhibits, answers to interrogatories, affidavits, and counter-affidavits.

[1] In granting summary judgment for Werner the trial court found that there were no genuine issues of material fact. Before the propriety of that finding can be considered, we must construe the relevant portion of the indemnity provision upon which plaintiff bases its claim. It reads as follows:

"7. Contractor [Werner] agrees to indemnify and save harmless Norfolk from and on account of injury to any person or persons, including death, as well as damage to or loss of property, or claims in connection therewith, caused by or resulting from any acts or omissions, negligent or otherwise, of Contractor or any of Contractor's Trucker's agents, servants or employees in the performance of the services herein undertaken. . . ."

The language is unambiguous and should be given its ordinary meaning. *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539 (1962). Under the terms of this indemnity provision, Werner agreed to indemnify Norfolk for any liability which Norfolk incurred for property damage or personal injury caused by or resulting from any acts or omissions of Werner or Werner's employees, whether the acts or omissions were negligent or not. Such an indemnity provision is not against public policy when the contract is private and not connected with the public service of a public service corporation. *Gibbs v. Light Co.*, 265 N.C. 459, 144 S.E. 2d 393 (1965).

In order for Norfolk to recover under the indemnity agreement at trial it must prove that the injury of Jerry Boyles was caused by or resulted from an act or omission of Werner. Boyles was an employee of Werner and acting within the scope of his employment at the time of his injury. Thus, in the context of Werner's agreement to indemnify Norfolk, any act or omission of Boyles, negligent or otherwise, which was a proximate cause of his injury was the act or omission of Werner.

[2] The first determination to be made in considering the propriety of summary judgment is whether Werner, as the party moving for summary judgment, has met the burden placed upon it under Rule 56(c). The movant's burden was stated in *Page v. Sloan, supra,* as follows:

"Our Rule 56 and its federal counterpart are practically the same. Authoritative decisions both state and federal, interpreting and applying Rule 56, hold that the party moving for summary judgment has the burden of 'clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded.' 6 Moore's Federal Practice (2d ed. 1971) § 56.15[8], at 2439; *Singleton v. Stewart, supra.* Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(b); *Kessing v. Mortgage Corp., supra.*"

The movant must meet this burden even when he does not have the burden of proof at trial. *Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 191 S.E. 2d 683 (1972).

The phrase "no genuine issue as to any material fact" is the heart of the summary judgment procedure and the test applied in reviewing the propriety of a trial court's ruling on a summary judgment motion. 10 Wright & Miller, Federal Practice and Procedure: Civil §§ 2716 and 2725 (1973). In *McNair v. Boyette, supra,* this Court articulated the test in these words:

"The determination of what constitutes a 'genuine issue as to any material fact' is often difficult. It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. A question of fact which is immaterial does not preclude summary judgment. It has been said that a genuine issue is one which can be maintained by substantial evidence. Where the pleadings or proof of either party disclose that no cause of action or defense exists, a summary judgment may be granted. . . ." (Citations omitted.)

Application of the foregoing rules to the evidentiary material demonstrates that this is not an appropriate case for summary judgment.

In support of its motion for summary judgment, Werner offered the affidavit of Jerry Boyles reading as follows:

"The undersigned, Jerry Styers Boyles, being duly sworn, deposes and says:

1. That on February 15, 1970, he was an employee of Werner Industries, Inc., employed on the 'third shift' (11:30 p.m. to 7:30 a.m.) at an automobile unloading and storage area of Norfolk and Western Railway Company (hereinafter referred to as 'Norfolk'), at Walkertown, North Carolina.

2. That at the end of eleven sets of tracks Norfolk had three large unloading ramps mounted on rails and movable, by use of an electric control device, from one track to another. And, that each of the three ramps weighed several tons and was mounted on steel wheels, with the lower portion, or frame, being approximately six to eight inches above the ground.

3. That on the date of my injury the said unloading facility had been open for approximately four days, from

February 10, 1970. During that time I had operated unloading ramps at the Walkertown facility, including the moving of them from track to track, without difficulty. Every ramp I operated stopped as soon as the control switch was released, and would not coast or roll. It was my experience that movement of each ramp was totally dependent upon power from the electric motor on each.

4. That the control switches were mounted so that the operator had to stand in front of the unloading machines and to move them toward himself. It would have been hazardous to walk backwards down the track in front of one of the machines. The standard procedure was for the operator to walk in front of the machine, with his back to it, holding the control switch behind himself and releasing the control switch when the desired position was reached.

5. That on February 15, 1970, at approximately 12:30 p.m., I operated one of the mechanical unloading ramps, moving it from one track to another. That mechanical unloading ramp appeared older than the other two. When the ramp reached the position I wanted it in, I released the switch and continued walking away from it. On this occasion the switch malfunctioned causing the ramp to continue moving, catching the back of my right heel under the frame, and it continued to roll forward, breaking my right foot under it before it stopped.

6. But for the malfunction of the control switch, the accident would not have occurred. I had no warning whatsoever from Norfolk of the possible malfunction of their mechanical unloading ramp, or that such malfunction was a hazard to guard against. Norfolk provided the ramps and all maintenance and repair for them. Werner Industries, Inc., did not do anything, or fail to do anything, which caused or contributed to my injury.

7. That since the accident a piece of metal has been welded by Norfolk to the leading frame member of each of the unloading ramps, in a downward position, which acts as a guard, and the particular machine which malfunctioned, causing my injury, has been taken out of service by Norfolk."

Werner then offered Norfolk's answers under oath to certain interrogatories wherein Norfolk stated that it was the

owner and responsible for the repair and maintenance of the unloading ramp under which Boyles' foot was caught and broken. Norfolk's answers further disclose that the ramp was installed by it in February 1970 and that no repairs were made thereafter to said ramp, either before or after the accident in which Boyles was injured. Norfolk further states that prior to Boyles' injury no problem or defect in the electric control mechanism of this particular ramp was ever reported to any employee of Norfolk.

[3, 4]   The affidavit of Jerry Boyles, taken as true, establishes that the injury was due to a malfunction in the switch, the repair and maintenance of which was the responsibility of Norfolk. In that event, the accident was not caused by an act or omission of either Boyles or Werner. This showing negates Norfolk's claim that the accident resulted from an act or omission of Werner and initially carries the burden placed upon movant under Rule 56(c). The burden consequently shifts to plaintiff, who opposed the motion for summary judgment, to show "that there is a genuine issue for trial" as required under Rule 56(e), or to provide an excuse for not doing so under Rule 56(f). G.S. 1A-1, Rule 56(e); 6 Moore's Federal Practice § 56.15[3] (1974).

To meet the burden thrust upon it by Rule 56(e), Norfolk offered the affidavits of W. D. Mason, Jr., and Byron D. Williams (the affidavit of L. L. Callahan, Jr., is not pertinent to this case) which read as follows:

"The undersigned, W. D. Mason, Jr., being duly sworn, deposes and says:

'I am employed by the Norfolk and Western Railway Company as a design engineer and have been with the Railway Company since 1950. On February 18, 1970, I was advised by Mr. Jay W. Ricketts, Manager of Werner Industries, Inc., that one of his employees had been injured while operating an unloading ramp at the new auto unloading facility.

'I requested that Mr. B. D. Williams, Superintendent of Davis H. Elliot Company, Inc., accompany me to make an inspection of the unloading ramp operation.

'Mr. Williams operated the unloading ramp several times in both directions. The ramp appeared to drift very

little after the switch was released. It may have drifted two to three inches when the switch was released. This is normal operation and there was nothing unusual about the operation of this ramp. To my knowledge, no repairs were needed on the ramp. It appeared to be operating properly.' "

\*   \*   \*   \*

"The undersigned, Byron D. Williams, being duly sworn, deposes and says:

'I am employed by the Davis H. Elliot Company, Inc. as a superintendent and presently work at the Norfolk and Western Railway Company's auto unloading facility at Walkertown, North Carolina.

'In February of 1970, several days after Jerry Styers Boyles had been injured at the facility, I was asked by Mr. Mason of the Norfolk and Western Railway Company to inspect the operation of the unloading ramp which had been involved in the accident.

'At that time, I operated the switch which moved the ramp. I did this several times in both directions. When the switch was released, the ramp would drift about two to three inches before stopping. This is normal operation and not unusual. I could find nothing wrong with the electrical operation of the ramp.' "

Facts asserted by the party answering a summary judgment motion must be accepted as true. *Schoolfield v. Collins, supra.* When so considered, Norfolk's affidavits contradict Boyles' assertion that the accident resulted from a faulty switch and permit the inference that Boyles has falsified the cause of his injury. This raises an issue of credibility sufficient to defeat defendant's motion for summary judgment and advance the case to trial. *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 88 L.Ed. 967, 64 S.Ct. 724 (1944); *Eisbach v. Jo-Carroll Electric Cooperative, Inc.,* 440 F. 2d 1171 (7th Cir. 1971); 6 Moore's Federal Practice § 56.15[3] and § 56.15[4] (1974); 10 Wright & Miller, Federal Practice and Procedure: Civil § 2726 (1973); *see* Louis, A Survey of Decisions Under the New North Carolina Rules of Civil Procedure, 50 N.C.L. Rev. 729, 735-46 (1972).

In our opinion various inferences arise from the evidentiary materials now in the record. Boyles was the only witness to his accident and is the only person knowledgeable of its cause. Fur-

thermore, he is an employee of defendant and an interested witness. We hold on these facts that Norfolk should have the opportunity to impeach Boyles at trial. *Sartor v. Arkansas Natural Gas Corp., supra; Colby v. Klune,* 178 F. 2d 872 (2d Cir. 1949) ; *Lee v. Shor,* 10 N.C. App. 231, 178 S.E. 2d 101 (1970).

For the reasons stated the decision of the Court of Appeals affirming entry of summary judgment in favor of defendant is

Reversed.

Chief Justice BOBBITT not sitting.

Justice LAKE did not participate in the hearing or decision of this case.