TEXACO, INC. v. GEORGE E. CREEL, GRAHAM R. CREEL AND LORENE G. BRAME

No. 381PA82

(Filed 30 April 1984)

**1. Vendor and Purchaser § 1.3— options to purchase—fixed price and right of first refusal—construction**

Where a lease contained a $50,000 fixed price option to purchase the property "at any time during the term of this lease or any extension or renewal thereof" and a "right of first refusal" option giving the lessee the right to purchase "on the same terms and at the same price as any bona fide offer" for the premises which the lessors desire to accept, and where the lease also provided that "any option herein granted shall be continuing and pre-emptive, binding on the lessor's heirs, devisees, administrators, executors or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof," the fixed price option continued to bind the lessors or their successors in interest even though the lessee failed to meet a bona fide third-party offer.

**2. Appeal and Error § 24— cross-assignments of error by appellees**

Appellees' failure to except to and cross-assign as error the portion of the trial court's summary judgment order relating to the sufficiency of appellant's tender of the purchase price under an option precludes appellate review of the sufficiency of the tender. App. Rule 10(d).

---

Texaco, Inc. v. Creel

---

**3. Vendor and Purchaser § 5— contract to convey pursuant to option — specific performance — effect of value of property and negotiation for resale**

> Plaintiff was entitled to specific performance of a contract to convey pursuant to a fixed price option even though the property may have been worth significantly more than the price fixed by the contract and plaintiff may have negotiated for a resale of the property.

> Justice FRYE did not participate in the consideration or decision of this case.

ON petition for discretionary review of a decision of the Court of Appeals, 57 N.C. App. 611, 292 S.E. 2d 130 (1982), reversing the denial of plaintiff's motion for summary judgment by *Judge John Martin,* presiding at the 23 February 1981 Session of ORANGE Superior Court.

*Newitt, Bruny & Koch by John G. Newitt, Jr. and Roger H. Bruny, attorneys for defendant appellants.*

*Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison by Josiah S. Murray, III and Joel M. Craig, attorneys for plaintiff appellee.*

EXUM, Justice.

This is an action for specific performance of a fixed price option provision in a lease. The determinative issue is whether plaintiff, as defendants' lessee, is entitled to specific performance. We conclude plaintiff is so entitled and affirm the Court of Appeals.

On 9 September 1949, the Texaco Company, plaintiff's predecessor in interest, leased from Thomas and Inez Pendergraft, defendants' predecessors in interest, a lot located next to Fowler's Food Store in Chapel Hill. The lease was to begin on 1 February 1950 and run for ten years with the lessee given the option to extend the term for four additional five-year terms. The rent for the duration of the lease, including any extensions, was set at $100 per month.

Plaintiff apparently elected to extend the lease for all four extensions so the lease was due to expire on 31 January 1980. The lease contained the following language which gives rise to the instant suit:

(11)—Option to Purchase. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof,

(a) for the sum of *Fifty Thousand* dollars; it being understood that if any part of said premises be condemned, the amount of damages awarded to or accepted by lessor as a result thereof shall be deducted from such price,

(b) On the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with.

Any option herein granted shall be continuing and preemptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof.

Upon receipt of lessee's notice of election to exercise any option granted herein, which notice shall be given in accordance with the Notice Clause of this lease, lessee shall have a reasonable time in which to examine title and, upon completion of such examination if title is found satisfactory, shall tender the purchase price to lessor, and lessor shall thereupon deliver to lessee a good and sufficient Warranty Deed conveying the premises to the lessee free and clear of all encumbrances (including without limiting the foregoing

Texaco, Inc. v. Creel

the rights of dower and/or curtesy). All rentals and taxes shall be prorated between grantor and grantee to the date of delivery of the aforesaid deed.

Lessee's notice of election to purchase pursuant to either of the options granted in this clause shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires.

There is evidence in the record that defendants Creel received several offers from third parties to purchase the property for more than $50,000 in January 1980. There is also evidence that plaintiff gave written notice of its intention to exercise the fixed price option to defendants on 17 January 1980 and to counsel for defendants Creel on 31 January 1980. We will assume for purposes of analysis that all the offers received by defendants were bona fide, and were promptly communicated to plaintiff in the manner required under the lease. We will also assume that defendants would have accepted the highest offer of $217,000 (made by two children of defendants Creel) had it not been for plaintiff's intention to exercise its fixed price option and to seek specific performance of the contract to convey created by such exercise. Plaintiff actually attempted to tender the fifty-thousand-dollar purchase price, set forth in the fixed price option, by check to defendants on 1 February 1980. Because defendants, believing the contract required plaintiff to meet its highest offer, refused to convey title to the property, plaintiff filed suit on 4 February 1980 for specific performance and also filed a notice of lis pendens on the property. Defendants counterclaimed, asserting they had been damaged in the amount of $217,000 when the younger Creels withdrew their offer because of reluctance to "buy a lawsuit." Defendants also asserted they were entitled to treble damages because the filing of lis pendens was an unfair and deceptive trade practice.

Both parties moved for summary judgment. The trial court denied plaintiff's motion, concluding plaintiff was not entitled to specific performance. A jury trial was held on defendants' counterclaims, and the trial court directed a verdict in favor of plaintiff on its motion at the close of defendants' evidence. Both sides appealed.

The Court of Appeals, in a well-reasoned opinion by Judge Becton, correctly recognized the case involves only a question of law — the interpretation of the option clauses in the lease. The Court of Appeals summarized the split of authority in other jurisdictions involving leases substantially similar to the instant one, adopted that view which it thought was most faithful to the language of the lease, and concluded plaintiff properly conformed to the option requirements. It reversed the trial court and remanded the case for entry of summary judgment for plaintiff and for an order directing specific performance of the fixed option agreement. 57 N.C. App. at 619, 292 S.E. 2d at 135.

[1] This appeal raises a question of first impression in North Carolina — the interpretation of a fixed price option accompanied by a "right of first refusal" option. Because no genuine issue of material fact has been presented, summary judgment is an appropriate vehicle for determining the contentions of the parties. As summarized in *Kidd v. Early*, 289 N.C. 343, 352, 222 S.E. 2d 392, 399 (1976), by former Chief Justice Sharp writing for the Court:

> Upon motion a summary judgment must be entered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law.' G.S. 1A-1, Rule 56(c). The party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. His papers are carefully scrutinized and all inferences are resolved against him. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975); *Railway Co. v. Werner Industries*, 286 N.C. 89, 209 S.E. 2d 734 (1974); *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972). The court should never resolve an issue of fact. 'However, summary judgments should be looked upon with favor where no genuine issue of material fact is presented.' *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823, 830 (1971).

In order to discern the effect the parties intended the option clauses to have, we must, as in any contract, examine "the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is

executed." *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 492, 219 S.E. 2d 190, 196 (1975).

The plain language of the lease gives plaintiff the right to purchase the property for fifty thousand dollars "at any time during the term of this lease or any extension or renewal thereof." It also gives plaintiff the right to purchase the property "[o]n the same terms and at the same price as any bona fide offer" for the premises which the lessor desires to accept. If the lessor receives a bona fide offer he must immediately notify the lessee in writing of the "full details of such offer." The lessee then has thirty days after receiving the notice to exercise his right to purchase. Significantly, the lease further provides:

> Any option herein granted shall be *continuing and pre-emptive*, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and *the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising* during the term of this lease or any extension or renewal thereof. [Emphasis added.]

Defendants argue we should construe this language to mean that failure to exercise the right of first refusal in one case terminates forever the right to exercise the fixed price option. They further argue that to construe the fixed price option as continuing would mean that it would be

> enforceable against lessor and against all third parties who purchased the property from lessor regardless of the fact that the lessee had refused to exercise its right of first refusal. As a practical matter this would place a ceiling of $50,000.00 on the price which the lessor could obtain for the property during the entire thirty years that the lease and its renewals were in effect thus depriving lessor of all appreciation in value.

Plaintiff, on the other hand, argues the two

> provisions are separate alternatives, and the pre-emptive rights granted in Paragraph 11(6) in nowise limit Plaintiff's rights under the fixed-price option of Paragraph 11(a) of the Lease. Under this analysis, Plaintiff was entitled to exercise

its fixed-price option notwithstanding the presence of alleged third-party offers at a higher price.

Defendants rely on *Texaco, Inc. v. Rogow*, 150 Conn. 401, 190 A. 2d 48 (1963), which involves the same plaintiff and substantially similar language in a lease. In *Rogow* the lease contained a fixed price option of $16,000 which could only be exercised *after* the ninth year of the lease. Just before the end of the ninth year the lessor received a bona fide offer to purchase the premises for $44,000. The lessee was notified of this offer, but chose to give notice of its exercise of the fixed price option after the end of the ninth year. When the lessor refused to convey the property for the $16,000 price, the lessee filed suit.

The Connecticut Supreme Court concluded:

The plaintiff's [lessee's] fixed price option could be effectively exercised only after the first nine years of the term, and then, practically speaking, only prior to the plaintiff's receipt of a notice from the defendant of a valid and bona fide offer from a third party. On April 30, 1959, still during the first nine years of the lease, the plaintiff did receive notice from the defendant of the [third party's] offer and of the defendant's desire to accept it. Thereupon, the fixed price option was rendered ineffective and could not be exercised even after the close of the ninth year, and the plaintiff had to accept the first refusal offer, as provided in the lease, or risk losing the right to purchase the property thereafter.

150 Conn. at 409, 190 A. 2d at 52.

In reaching this conclusion the Court discussed its concern that if the lessee were allowed to exercise the fixed price option after it had declined to meet a third party offer the lessee could effectively control the price at which a third party would offer to purchase the property during the entire term of the lease. No third party would want to pay more than the amount in the fixed price option if it knew the lessee could force a sale later at the fixed price. The Court rejected the lessee's argument that the following language in the lease mandated precisely the result that permitted the lessee in effect to control the ceiling price of offers to purchase:

> Any option herein granted shall be continuing and pre-emptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease.

*Id.* at 406, 190 A. 2d at 51. It is because the *Rogow* Court's interpretation gives no effect to this language that we believe the authority cited by plaintiff is more persuasive.

Plaintiff also relies on a case interpreting a lease in which Texaco, Inc. was the lessee and containing language almost identical to that in the lease at issue here. In *Crowley v. Texaco, Inc.*, 306 N.W. 2d 871 (S.D. 1981), the lease contained two option clauses in Paragraph 11. The first was a $22,000 fixed price option. The second clause was a right of first refusal which became an option when the lessor gave the lessee notice of a third-party offer.

The South Dakota Supreme Court summarized the split of authority on the proper interpretation of dual option provisions.

> One line of cases hold, as did the trial court in this case, that if the lessee does not purchase after due notice of a bona fide offer, then the optioner, by selling the premises, terminates the fixed price option. *Shell Oil Co. v. Blumberg*, 154 F. 2d 251 (5th Cir. 1946); *Manasse v. Ford*, 58 Cal. App. 312, 208 P. 354 (1922); *Harding v. Gibbs*, 125 Ill. 85, 17 N.E. 60 (1888); *Northwest Racing Association v. Hunt*, 20 Ill. App. 2d 393, 156 N.E. 2d 285 (1959); *Adams v. Helburn*, 198 Ky. 546, 249 S.W. 543 (1923).

> The construction accepted by other authorities is that unless otherwise provided in the lease, the two provisions are separate and distinct. *Sinclair Refining Co. v. Clay*, 102 F. Supp. 732 (N.D. Ohio 1951), aff'd, 194 F. 2d 532 (6th Cir. 1952); *Cities Service Oil Co. v. Estes*, 208 Va. 44, 155 S.E. 2d 59 (1967). The lessee may exercise his option to purchase for a fixed price without regard to the provision for first right of purchase. *Gulf Oil Corp. v. Montanaro*, 94 N.J. Super. 348, 228 A. 2d 352 (1967). The lessee's rights under an (11)(a) type option have thus been held to be continuing and are not ex-

tinguished by the failure of the lessee to earlier exercise a first right to purchase after notice of an offer from a third person. *See*: 51(C) C.J.S. Landlord & Tenant § 88(11).

One of the leading cases adhering to the latter view is *Butler v. Richardson*, 74 R.I. 344, 60 A. 2d 718 (1948). The Rhode Island Supreme Court concluded that a fixed price option similar to (11)(a) was clear, explicit, and not coupled with or conditioned upon any other agreement. Regarding the first refusal provision, the Court said:

> But the question here is what effect this provision for a first refusal has, if any, upon the provision for an option. As we indicated above it has no effect whatever. The right of option remains unimpaired. Until the time prescribed for its exercise expires, the respondents cannot sell for any amount without complainants' consent. However, the provision for a first refusal may nevertheless serve a useful purpose. It provides a means whereby respondents, if they desired, could induce an acceleration of complainants' decision to purchase by affording them an opportunity to purchase at a price more advantageous to them than the price fixed in the option. Of course the provision could not serve this purpose if the offer was at a higher price, and consequently it is inconceivable that the parties in agreeing to the provision could have contemplated any offer except one that was lower than $15,000. We are of the opinion, therefore, that the provision for a first refusal should be construed in that light, not so much as an alternative to the provision for an option but rather as a supplement thereto.

74 R.I. at 349-50, 60 A. 2d at 722.

306 N.W. 2d at 873-74.

The South Dakota Supreme Court relied on several principles of construction, as well as the precedents in other jurisdictions, in analyzing the language of the contested lease. One of those principles was that the purchase option was for the benefit of the lessee and was to be construed "with that in mind." *Id.* at 874. The Court also emphasized that a proper interpretation should give effect to each provision of the lease. *Id.* The Court concluded

the "continuing and preemptive" language referring to "[a]ny option" would be nullified if the failure of the lessee to meet a bona fide offer resulted in a termination of the right to exercise the fixed price option. Thus, it concluded the lessee's failure to meet an earlier "attractive" offer by a third party did not terminate its right to exercise the $22,000 fixed price option in the contract.

We believe, as did the South Dakota Court, that the interpretation which is most faithful to the language of the contract is that the fixed price option continues to bind the lessors or their successors in interest even if the lessee fails to meet a bona fide third-party offer. According to defendants, the only language called into question under this interpretation is the last sentence of paragraph 11(b), providing: "No sale of or transfer of title to said premises shall be binding on lessee unless and until [the notice requirements of the first refusal provision] are fully complied with." Defendants argue that if this statement is true, then the converse must be true; that is, if the notice requirements are met and lessee fails to meet the third party offer, then all its options must be extinguished or the sale would not be binding. When read in context, however, we believe the sentence was clearly intended to protect the lessee from a sale at less than the fixed price, of which it had no notice. To permit such a sale to be binding would negate the lessee's right of first refusal because there would be no penalty on the lessors if they sold the property without communicating the favorable offer to the lessee.

We believe that not only the language of the lease, but the situation of the parties in 1949 when the lease was made indicates they intended both options to continue even if a third party offer is not met by the lessee. We recognize the result of this interpretation of the lease is harsh if it deprives defendants of the appreciated value of their property which exceeds the fixed price. But, as stated earlier, in construing a contract we look not only at its language, but also at the situation of the parties *at the time the contract was made*. In 1949 it was unlikely that either party anticipated the dramatic increases in property values on Franklin Street in Chapel Hill which have occurred in the intervening years.

It is also apparent from the lease that Texaco was concerned about a third party buying the property after it had improved the

property and established a business. The lessors were most likely concerned about being in a position to induce lessee to buy the property at a price more advantageous than the fixed price option, should they no longer wish to have their asset tied up in a long-term lease. The first refusal provision thus served the purposes of both parties. In addition, the actual price set in the fixed price option was obviously a bargained-for sum. It is apparent from the Connecticut and South Dakota cases that Texaco did not have a uniform price it insisted upon in the fixed price option. Given that the rent on the property was only $100 per month for the entire term of the lease, it is probable that the lessors viewed the $50,000 price as being reasonable even at the end of the lease term.

[2]  In conclusion, we believe the Court of Appeals correctly construed the lease and plaintiff is entitled to summary judgment in its favor, if its fixed price option was properly exercised. Defendants have asserted on appeal that plaintiff's tender of the $50,000 purchase price was defective in that it was never delivered to George E. Creel and that it was in the form of the check. Defendants failed, however, to except to, or cross-assign as error, the trial court's conclusion in its summary judgment order in favor of defendants that there was no genuine issue as to the fact that "on 1 February 1980 plaintiff tendered to the defendants the sum of $50,000 for the purchase of the . . . property." Rule 10(d) of the North Carolina Rules of Appellate Procedure provides a means by which a party may except to and cross-assign as error a portion of an order from which his opposing party appeals.

> **Exceptions and Cross Assignments of Error by Appellee.** Without taking an appeal an appellee may set out exceptions to and cross-assign as error any action or omission of the trial court to which an exception was duly taken or to which an exception was deemed by rule or law to have been taken, and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

The failure to except to and cross-assign as error this portion of the trial court's order on summary judgment precludes review of the sufficiency of tender on appeal. N.C. R. App. P. 10(a).

[3] Finally, defendants assert that even if plaintiff properly exercised the option provision, it is not entitled to specific performance of the contract to convey which was thereby created. *See Kidd,* 289 N.C. at 352, 222 S.E. 2d at 399 (1976); *Byrd v. Freeman,* 252 N.C. 724, 114 S.E. 2d 715 (1960). Defendants argue it would be inequitable for plaintiff to receive specific performance when the property is worth significantly more than $50,000 and that plaintiff has an adequate remedy at law for damages.

These arguments are without merit. As stated in *Watts v. Keller,* 56 F. 1, 4 (8th Cir. 1893):

An option to buy or sell land, more than any other form of contract, contemplates a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value. An option to buy or sell a town lot may be valuable when the party can have the contract specifically enforced, but, if he cannot do this, and must resort to an action at law for damages, his option in most cases will be of little or no value. No man of any experience in the law would esteem an option on a lawsuit for an uncertain measure of damages as of any value. The modern, and we think the sound, doctrine is that when such contracts are free from fraud, and are made upon a sufficient consideration, they impose upon the makers an obligation to perform them specifically, which equity will enforce.

*Quoted in Ward v. Albertson,* 165 N.C. 218, 222, 81 S.E. 168, 169-70 (1914).

There is no question that the options in the lease were supported by consideration. *See First-Citizens Bank & Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367 (1946) (lease sufficient consideration for a lessee's option to purchase the property). That plaintiff may have negotiated for resale of the property does not prevent it from obtaining specific performance. Even if plaintiff had actually reached an agreement to resell, failure to obtain specific performance would render it unable to convey the property and would open it to suit for breach of the subsequent contract. In light of the principle that ordinarily one may obtain specific performance of a contract to convey land, such performance should be enforced regardless of the lessee's intent to resell. *Loveless v. Diehl,* 235 Ark. 805, 364 S.W. 2d 317 (1963);

*Waller v. Lieberman*, 214 Mich. 428, 183 N.W. 235 (1921); *Mc-Cullough v. Newton*, 348 S.W. 2d 138 (Mo. 1961); D. Dobbs, Remedies § 12.10 (1973). Plaintiff is entitled, on remand, to an order of specific performance of the fixed price option it has exercised. The decision of the Court of Appeals is

Affirmed.

Justice FRYE did not participate in the consideration or decision of this case.