POWERTEST CORPORATION

v.

Donald EVANS, et al.

Civ. No. B85–201(EBB).

United States District Court,
D. Connecticut.

Aug. 13, 1986.

---

Patrick J. Monahan, Edward Wood Dunham, Wiggin & Dana, New Haven, Conn., John F. Collins, Michele Gapinsky, Dewey, Ballantine, Busby, Palmer & Wood, New York City, for plaintiff.

Ralph L. Friedland, Friedland, Evans, Lutz, Bethel, Conn., Carl T. Holt, Richard W. Farrell, Farrell & Barr, Stamford, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

Plaintiff, the lessee of a parcel of property located in Brookfield, Connecticut, and operated as a gasoline station, has brought this action for declaratory relief concerning its rights under a "fixed-price purchase option" in the lease. The parties appear to agree that there are no material issues of fact relating to the interpretation and application of the clause in question and have filed cross motions for summary judgment. The plaintiff's motion is granted to the extent that it seeks a declaration that plaintiff validly exercised its rights under the fixed-price option. It is denied to the extent that plaintiff claims to be entitled to credit toward the sale price for rental payments made since the exercise of the option. The remainder of the declaratory relief sought by plaintiff is denied as moot. The defendants' cross motion for summary judgment is also denied.

### I.

The following facts are undisputed. Plaintiff is the successor in interest of the original lessee under the lease in question. Defendants are the present owners of the property subject to the lease, having acquired the property pursuant to a bequest from the original owners and lessors.

The lease originally commenced on June 1, 1965, for a term of ten years. Clause fourteen of the lease gave the lessee the option of extending the term of the lease for three additional five-year periods by giving appropriate notice. The plaintiff, or its predecessors in interest, have exercised all three options to renew the lease with the term of the final renewal running to May 31, 1990.[1] The lease was modified on

---

1. Plaintiff exercised the third renewal option after this dispute arose. Although plaintiff claimed the right to buy the subject property under the fixed-price option, it provided defend-

two occasions. The first modification on August 20, 1968, reflected the condemnation of a portion of the leased property by the State of Connecticut for "street purposes." The second modification on December 2, 1970, permitted the lessee to erect a new building on the property at its own expense. This modification also changed the schedule for payments under the lease, increasing near-term payments but decreasing payments that would be made under a third renewal of the lease. Both modifications expressly continued all other "terms, covenants, and conditions" of the lease in "full force and effect."

The lease included a provision granting the lessee certain rights with respect to the purchase of the property. The interpretation of this provision is the subject of the current dispute. The provision, clause fifteen of the lease, provides as follows:

Lessor hereby grants to Lessee the option to purchase said premises including all buildings, improvements and equipment thereon owned by Lessor at any time during the last 30 days of the initial ten year period of this lease and during the last 30 days of any extension thereof, for the sum of $50,000. Such option may be exercised by written notice from Lessee to Lessor to that effect. Should Lessee exercise such option then Lessee shall have a reasonable time within which to examine the title and a copy of the title report will be given to Lessor, who will cooperate in removing objections to title. If title is satisfactory to Lessee, Lessee shall tender the purchase price to Lessor and Lessor at the time of such tender shall deliver to Lessee a full covenant and warranty deed conveying said premises and all buildings, improvements and equipment thereon to Lessee, in fee simple, free and clear of all liens, encumbrances and restrictions whatsoever. All proper adjustments shall be made at the time of such conveyance.

Without prejudice to the foregoing option, Lessee shall have the pre-emptive right during the term of this lease or any extension thereof to purchase said premises, including all buildings, improvements and equipment thereon owned by Lessor, on the same terms and conditions as those of any bona fide offer received by and acceptable to Lessor and Lessor, before making any such sale or any agreement to sell, shall notify Lessee in writing of such terms and conditions. Lessee, within sixty days after receipt of such notice, may exercise this pre-emptive right by written notice to Lessor to that effect. Failure of Lessee to exercise this pre-emptive right on one or more occasions shall not affect Lessee's right to exercise it on any subsequent occasion. If Lessee shall fail to exercise this pre-emptive right on any occasion and the premises are actually sold by Lessor, such sale shall be made subject to this lease.

On December 20, 1984, defendants, through their attorney, notified plaintiff that they had received an offer to purchase the property for $500,000 from a third party and invited the plaintiff to exercise its right under clause fifteen to purchase the property for the amount of the offer. On February 7, 1985, defendants notified plaintiff that the first offer had "fallen through" but that they had received another offer to purchase the property for $400,-000. Again, the plaintiff was invited to purchase the property for that amount. In both notifications the defendants informed plaintiff of their view that the communication of the third-party offers to buy the property extinguished the plaintiff's right to purchase the property for the fixed-price set in the lease. The plaintiff disputed the defendants' interpretation of the lease and on April 30, 1985, and again on May 30, 1985, plaintiff informed the defendants of its intent to exercise its option to purchase the property for fifty thousand dollars. The defendants have refused to convey the property to plaintiff at the price fixed in the lease. On April 29, 1985, the defendants entered into an agreement for sale of

ants conditional notice of its intention to extend the lease "[w]ithout prejudice to its exercise of the option to purchase." *See* Exhibit M, Plaintiff's Appendix To Motion For Summary Judgment.

the property with one George Newman. The sale price was set at $400,000.[2] However, the sales agreement included a clause in a rider making the agreement contingent upon, among other things, the defendant prevailing in the instant law suit. *See* Exhibit N, Plaintiff's Appendix To Motion For Summary Judgment.

## II.

■■■ Clause fifteen of the lease sets forth two ways in which the plaintiff, as lessee, could purchase the property. The first paragraph of the clause sets forth a "fixed-price" option which can be exercised by the lessee only within the last thirty days of the lease period or the last thirty days of any extension of the lease. Under this fixed-price option, the lessee is entitled to purchase the property, including buildings, improvements and equipment, for a price of fifty thousand dollars.

The second paragraph of clause fifteen also grants the lessee a "right of first refusal". This right is expressly granted "without prejudice to" the lessee's rights under the fixed-price option. Under the right of first refusal the owner is required to present the terms and conditions of any bona fide offer to purchase to the lessee. The lessee has sixty days within which to exercise its right to purchase the property on the same terms and conditions as the offer to purchase. In the event that the lessee chooses not to exercise its right of first refusal and the property is sold to a third party, the "sale shall be made subject to [the] lease."

The defendants have argued that under Connecticut law the fixed-price option is extinguished if it is not exercised before the lessor communicates a bona fide offer to purchase pursuant to the right of first refusal paragraph. In support of this position defendants rely heavily on *Texaco, Inc. v. Rogow*, 150 Conn. 401, 190 A.2d 48 (1963).

*Rogow* also involved construction of a lease containing both a fixed-price option and a right of first refusal. The applicable provision of the *Rogow* lease is set out fully below.[3] The *Rogow* court construed

---

**2.** The plaintiff has maintained that this sales price included the purchase of a business operated by one of the defendants on the property pursuant to a sublease with the plaintiff. Although certain provisions of the sales agreement tend to confirm plaintiff's view, in a deposition Mr. Newman testified that he intended to purchase only the property for $400,000. Therefore, a disputed issue of fact exists as to whether the $400,000 was intended to be for the purchase of the property only or the purchase of the property and business. However, as will be discussed infra, resolution of this factual dispute is made unnecessary by the result of this motion.

**3.** (9)—OPTION TO PURCHASE. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, together with all structures, improvements, and equipment thereon, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof. (a) for the sum of Sixteen thousand ($16,000) dollars; it being understood that if any part of said premises be condemned, the amount of damages awarded to or accepted by lessor as a result thereof shall be deducted from such price, (b) On the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with.

Any option herein granted shall be continuing and pre-emptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof.

Upon receipt of lessee's notice of election to exercise any option granted herein, which notice shall be given in accordance with the Notice Clause of this lease, lessor shall immediately deliver to lessee, at lessor's expense, a complete Abstract of Title or other evidence of title satisfactory to lessee, and shall also furnish, at lessor's expense, an up-to-date survey by a licensed or registered professional engineer or surveyor showing elevation of property and corners marked with concrete

the option clause as establishing two independent and mutually exclusive provisions so that the invocation of one provision prevented the operation of the other. *Id.* at 407–408, 190 A.2d 48. In so construing the purchase option clause the court noted that other cases construing contracts containing both fixed-price options and rights of first refusal were of little help in deciding the case then before it. Although the contracts involved in other cases might be similar, differences in wording or the circumstances surrounding their execution limit the precedential value of those other cases. 150 Conn. at 406, 190 A.2d 48.[4]

The language of the lease involved in the instant case differs substantially from the lease before the court in *Rogow*. Most significant are the words used to introduce the second paragraph of clause fifteen: "Without prejudice to the foregoing option...." Although the *Rogow* court found that the language in the lease before it created two independent options on a parity with each other, the "without prejudice" language used in the lease before this court appears to subordinate the right of first refusal to plaintiff's rights under the fixed-price option. An interpretation similar to the one applied in *Rogow*, which would extinguish plaintiff's rights under the fixed-price option, would certainly be "with prejudice" to those rights. Such an interpretation is simply not available under the clear language used in clause fifteen.

As noted above, because of the differences in language used, the construction given other leases by various courts are of limited precedential value. However, the rules of construction applied by those courts may be helpful. Most significantly it should be noted that purchase options in leases are normally inserted for the benefit of the lessee and should be interpreted in light of this purpose. *Texaco, Inc. v. Creel,* 310 N.C. 695, 703, 314 S.E.2d 506, 510 (1984); *Crowley v. Texaco, Inc.,* 306 N.W.2d 871, 874 (S.D.1981). *Cf. Texaco, Inc. v. Rogow,* 150 Conn. at 409, 190 A.2d 48 (the lessee is to be favored in construing ambiguous language in a lease).

The fixed-price option provides the lessee with a guaranty that it will be able to purchase the property at a price no greater than the one established in the option. Interpreting the lease as allowing the lessor to extinguish the fixed-price option by soliciting offers to purchase from third parties and communicating these offers to the lessee would nullify the lessee's benefit under the fixed-price option, especially when the lessee is limited to exercising the fixed-price option at the end of the lease term. For example, if the market value of the property is below the fixed-price, the option is of no value. If the market value exceeds the fixed price, the lessor will be able to solicit bids on the property at the higher price before the lessee is entitled to exercise the option and extinguish the lessee's rights under the option. In either case, the fixed-price option is reduced to a meaningless provision.

The defendants have argued that a construction of clause fifteen that would permit the fixed-price option to survive the communication of a bona fide offer to the lessee would make the right of first refusal

---

monuments, upon receipt of which the lessee shall have a reasonable time in which to examine title and upon completion of such examination if title is found satisfactory, shall tender the purchase price to lessor, and lessor shall thereupon deliver to lessee a good and sufficient Warranty Deed conveying the premises to the lessee free and clear of all encumbrances (including without limiting the foregoing the rights of dower and/or curtesy). All rentals and taxes shall be prorated between grantor and grantee to the date of delivery of the aforesaid deed.

Lessee's notice of election to purchase pursuant to either of the options granted in this clause shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires. 150 Conn. at 403, n. 1, 190 A.2d 48.

4. A number of cases have actually construed language nearly identical to that presented in *Rogow* as requiring the opposite result. These cases have reasoned that if the two purchase options are viewed as being separate and distinct, the lessee's right under the fixed-purchase option would survive its decision not to exercise its right of first refusal. *See e.g. Texaco, Inc. v. Creel,* 310 N.C. 695, 314 S.E.2d 506 (1984); *Crowley v. Texaco, Inc.,* 306 N.W.2d 871 (S.D. 1981).

meaningless. Under this argument, the right of first refusal is viewed as a provision benefiting the lessor and allowing the lessor to obtain fair market value for the property despite the granting of a fixed-price option to the lessee. If the provision is viewed as designed to benefit the lessor, the defendants' argument is persuasive because the lessor would not be able to induce prospective purchasers to pay in excess of the fixed-price if they were buying the property subject to the lease and the lessee's fixed-price option.

However, there is no basis for construing the right of first refusal in the subject lease as a provision designed for the lessors' benefit. Clause fifteen first grants the lessee a right to purchase the property at a fixed-price. It cannot be assumed that this granting of an option was intended by the parties to be a meaningless exercise. The clause makes this clear by stating explicitly that the fixed-price option would not be prejudiced by the lessee's right of first refusal. Finally, the clause concludes by noting that, should the lessee choose not to exercise the right of first refusal, any sale made by the lessor would be made "subject to [the] lease." There is no reason to conclude that the sale would be subject to some terms of the lease but not to the fixed-price option.[5]

Rather than accept defendants' interpretation of clause fifteen, which would render nugatory the fixed-price option, the court will fulfill its obligation to provide a reasonable and rational construction that will give effect to each part of the lease. *Rogow*, 150 Conn. at 408, 190 A.2d 48. Fortu-nately, other courts which have construed similar "dual option" leases provide guidance to the construction of this lease. These courts have recognized that the fixed-price option serves to assure the lessee that it will be able to purchase the property for the bargained-for price while the provision providing a right of first refusal gives the lessor an opportunity to liquidate its interest before the expiration of the lease. *See Texaco, Inc. v. Creel,* 310 N.C. 695, 314 S.E.2d 506, 510–11 (1984); *Crowley v. Texaco, Inc.,* 306 N.W.2d 871, 874 (S.D.1981); *Conroy v. American Oil Co.,* 374 So.2d 561, 566 (Fla.App.1979); *Shell Oil Co. v. Prescott,* 398 F.2d 592, 594 (6th Cir.1968); *Butler v. Richardson,* 74 R.I. 344, 60 A.2d 718, 722 (1948). In other words, the lessor may attempt at any time to realize the present value of the income stream established by the rental payments due under the lease and the fifty thousand dollars receivable under the fixed-price option.[6] This construction gives effect to the fixed-price option guaranteeing lessee's right to purchase the property for a sum certain, while recognizing the lessors' right to liquidate their interests prior to the expiration of the lease and any extensions. In contrast, the construction advocated by the defendants completely subordinates the fixed-price option to the right of first refusal provision, despite the clear "without prejudice" language used in clause fifteen. The defendants' construction must be rejected in light of the unambiguous language contained in the lease and the rule of construction favoring interpretations that give effect to each part of the lease.

**5.** It is noteworthy that the clause at issue in *Rogow* did not expressly provide that a sale of the property by the lessor would be subject to the lease if the lessee chose not to exercise its right of first refusal. To the contrary, the clause stated that a sale of the property would not "be binding on lessee" unless it was given an opportunity to exercise its right of first refusal. This language implies that a sale would be "binding" on the lessee if it was given an opportunity to exercise its right of first refusal and chose not to do so. Arguably, the language making a sale of the property "binding" on the lessee demonstrates an intention to cancel the fixed-price option if the lessor properly notified the lessee of a bona fide offer to purchase.

**6.** This assumes that the market value exceeds fifty thousand dollars so that the lessee would choose to exercise its fixed-price option. Of course, if at the time of the sale it is not anticipated that the property would appreciate to fifty thousand dollars, the purchaser would be paying for the present value of the income stream under the lease and the anticipated value of the lessor's reversionary interest in the property. The right of first refusal would allow the lessee to take advantage of any decrease in value of the property or avoid having to deal with a new landlord by accelerating its option to purchase the property at the present value of the lease with its fixed-price option.

*Cf.* 1A, Corbin on Contracts, § 261B (contract giving fixed price option and right of first refusal construed to preserve fixed-price option)

### III.

The defendants have argued that a construction of the lease giving plaintiff the right to buy property worth $400,000 for the fixed-price of fifty thousand dollars would be unconscionable. It is tempting for a court to view such a provision as an example of overreaching by a large oil company to obtain unfair advantage of a small property owner. However, a lease, like any contract, should be scrutinized "in light of the circumstances existing at its execution," *Collins v. Sears, Roebuck & Co.,* 164 Conn. 369, 373, 321 A.2d 444 (1973), and also in light of the general rule " 'that competent persons shall be given the utmost liberty in contracting and that their agreements voluntarily and fairly made shall be held valid and enforced by the courts.' " *Id.* at 377, 321 A.2d 444 (quoting *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 356, 51 S.Ct. 476, 477, 75 L.Ed. 1112 (1931)). For the court to invalidate a clause in a contract it must be shown that the clause involved was "so one-sided as to be unconscionable *under the circumstances existing at the time of the making of the contract.*" *Hamm v. Taylor,* 180 Conn. 491, 495–96, 429 A.2d 946 (1980) (emphasis added).

The defendants have not raised the defense of unconscionability in their answer to the amended complaint nor have they provided the court with any evidence supporting a claim that the fixed-price option was unconscionable in 1965 when the lease was originally executed. *See Fairfield Lease Corporation v. Romano's Auto Service,* 4 Conn.App. 495, 499, 495 A.2d 286 (1985) (defendant opposing summary judgment has burden of providing evidence

showing contract provision unconscionable). As other courts have noted, the mere fact that unexpected escalations in land values have occurred does not make a fixed-price option unconscionable as of the time the lease was executed. *Texaco, Inc. v. Creel,* 314 S.E.2d at 511; *Crowley v. Texaco, Inc.,* 306 N.W.2d at 874.

An examination of the economic realities reflected in the lease agreement demonstrates that the transaction was in all likelihood a considered decision by all parties to the lease. Although denominated a lease, the transaction was the economic equivalent of a sale of the property for fifty thousand dollars with the "sellers" taking back a nonrecourse mortgage for the sale price. Under this view, the "buyer" was to make a "balloon" payment of the principal in twenty-five years, with the option to make the payment at specified earlier dates. During the period of the "mortgage" the buyer was to make regular monthly payments in the nature of "interest" on the principal. The interest rate varied between twelve per cent and ten and one-half per cent during the term of the twenty-five year mortgage—not an unreasonable return on investment in 1965.[7] In the event that the "buyer" chose not to make the "balloon" principal payment, the property would revert to the "sellers-mortgagees." Under this analysis of the transaction, the first refusal option allowed the "mortgagees" to realize the present value of their "mortgage interest" at any time throughout the mortgage period.[8]

When the lease transaction is viewed as the economic equivalent of a sale of the property in 1965 for $50,000 it becomes clearer that it is not unconscionable to prevent the "sellers" from taking advantage of unforeseen changes in the real estate market by rescinding the original transaction. Without any evidence tending to

---

**7.** The modification executed in December, 1970, modified the rate of return so that it varied between fifteen per cent and 9.6 per cent through the remaining twenty years.

**8.** The court does not mean to imply that the "lease" has the *legal* affect of a sale of the property. The parties still maintained the relationship of landlord-tenant with the rights and obligations that attach to that relationship. However, the fixed-price option affected the nature of the transaction so that from an economic perspective the transaction was more like a sale than an ordinary lease.

show that fifty thousand dollars was an unconscionable price for the property in 1965, this court cannot declare the fixed-price option unconscionable.

## IV.

 Besides seeking a declaration that it can exercise its fixed-price option, the plaintiff also asks the court to declare that it is entitled to credit for rental payments made since it exercised its fixed-price option. As discussed above, these rental payments are economically similar to interest payable on the unpaid principal of a mortgage. The plaintiff has not yet paid the amount of this principal and the defendants have not had the benefit of the use of the funds. Because the plaintiff has been able to enjoy the continued use of the property without having to part with the fifty thousand dollar purchase price, there is no reason to allow plaintiff to receive credit for the amounts paid in rent since its attempt to exercise its fixed-price option.

## V.

Plaintiff has also asked the court to declare that the "offer" communicated by the defendants in their February 7, 1985, letter did not include the actual terms and conditions of the offer received from George Newman and therefore did not require plaintiff to exercise its right of first refusal. The plaintiff also seeks a declaration that its fixed-purchase option will survive any sale of the subject property.

The sales agreement between Mr. Newman and the defendants was contingent upon the defendants prevailing on the claims presented by plaintiff in this lawsuit. *See* Exhibit N, Plaintiff's Appendix To Motion For Summary Judgment. Because the plaintiff has prevailed on its claimed right to exercise the fixed-price option, the sales agreement is no longer in effect and plaintiff's requested declaratory relief is moot. Similarly, because plaintiff has the right to exercise the fixed-price option and has given notice of its intent to

exercise that right, there is no reason to address the plaintiff's claim that the fixed-price option would survive a sale to a third-party.[9]

## VI.

The defendants' motion for summary judgment is denied. The plaintiff's motion is granted to the extent that it seeks a declaration that plaintiff validly exercised its fixed-price option under clause fifteen of the lease and is entitled to purchase the property for fifty thousand dollars. The plaintiff's motion is denied in all other respects.

Pursuant to Rule 54(b), F.R.C.P., there being no just reason for delay, the clerk shall enter a declaratory judgment in plaintiff's favor in accordance with this ruling.

SO ORDERED.

---

**9.** The defendants have raised a counterclaim against the plaintiff under the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–

110b. The parties have not addressed this counterclaim in their motions.