ELOISE WITT et al., Appellants, v AUGUST J. DISQUE, as Specific Devisee and as Executor of PERCY N. BODDY, Deceased, Respondent.

Second Department, March 16, 1981

APPEARANCES OF COUNSEL

*Farley, Jutkowitz, LoCascio & Balint (J. David Jutkowitz, Lee S. Wiederkehr* and *Joseph R. LoCascio* of counsel), for appellants.

*Paul F. Perreten* for respondent.

### OPINION OF THE COURT

HOPKINS, J.

Special Term has granted summary judgment dismissing the complaint and declared an option held by the plaintiffs

to purchase land owned by the defendant void as a restraint on the power of alienation.

We reverse. Summary judgment should not be granted in favor of either party, since there are questions of fact to be determined at trial relating to the circumstances under which the option agreement was executed.

## I

In 1950, Percy N. Boddy, now deceased, operated a gasoline service station on certain premises in the Town of Greenburgh; a one-family house was also located on adjoining property. Apparently, both properties were under foreclosure by the Town of Greenburgh. The owner of the properties at that time is not disclosed by the record. Apparently, too, although this is not clear from the record, Henry Witt, also now deceased, entered into a contract with Boddy to the effect that Witt would purchase the properties and then sell them to Boddy for $17,100 (the amount which Witt was to pay for the properties originally).[1] The contract as finally made in writing provided that (1) the premises to be sold would be conveyed as two parcels, one to include the house, and the second to include the service station, and (2) the deed to the service station would contain an option in favor of Witt to repurchase that property at a price to be determined by subtracting from the contract price of $17,100 the net proceeds of a sale of the house, the option to become effective if Boddy should either decide to sell the service station or should die.

Thereafter Boddy contracted to sell the parcel on which the house was situated to a third party for $5,500. On June 29, 1950 Witt acquired title to the properties and conveyed them to Boddy. Simultaneously, Boddy and Witt executed a purchase-money mortgage to the Dobbs Ferry Bank in the sum of $8,800 on the parcel containing the service station. Boddy then conveyed the parcel containing the house pur-

---

1. Although the plaintiffs' brief states that the properties were under foreclosure and this is not denied in the defendant's brief, the contract between Boddy and Witt states that Witt had an enforceable agreement to purchase the properties from the Town of Greenburgh as the result of being the successful bidder at an auction sale held by the town board. This would indicate that the town already owned the properties.

suant to his contract upon receipt of $5,500. As a result of these transactions Boddy remained the owner of the service station, subject to the mortgage held by the bank.

The deed of June 29, 1950, conveying the service station by Witt to Boddy, included a repurchase option (presumably to carry out the intent of the contract between them), reading as follows: "IT is hereby expressly understood and agreed that in the event the party of the second part shall decide to sell the above described premises the party of the first part, his heirs or assigns, shall have an option to repurchase the same for the sum of Eleven Thousand Six Hundred ($11,600) Dollars plus the reasonable value of any improvements which may hereafter be made by the purchaser, said reasonable value not to exceed the sum of One Thousand ($1,000.00) Dollars, with taxes and insurance to be apportioned in the usual manner, said option to be exercised within 30 days of written notice given.

"IT is hereby expressely understood and agreed that the party of the first part, his heirs or assigns shall have an option to repurchase the said premises at the price stated above upon the death of the party of the second part, said option to be exercised by the giving of written notice to the heirs or legal representatives of the party of the second part within 30 days of the receipt of notice of death, which notice shall be deemed to be received if sent by registered mail to the last known address of the party of the first part."

On January 24, 1955 Witt and Boddy executed an agreement which fixed the value of the improvements referred to in the repurchase option at $1,000, thus making the total option price $12,600. On the same day an additional mortgage on the property was executed by Witt and Boddy to the Dobbs Ferry Bank for $5,000, and that mortgage was then consolidated with the purchase-money mortgage.

So matters stood until the death of Boddy on November 17, 1976. In the meantime Witt had died in 1960 and the plaintiffs are the executors and trustees of his estate. The defendant is the executor of the estate of Boddy and the specific devisee of the land within the option.[2]

---

2. Boddy's will in devising the land to the defendant recognized the option by providing that any cause of action that Boddy might have against the executors

The plaintiffs assert, and this is not denied by the defendant, that no notice of Boddy's death was ever given to them. They assert that they did not learn of Boddy's death until February, 1979. On February 13, 1979 plaintiff Eloise Witt exercised the option on her behalf, and on February 26, 1979 plaintiff Norman H. Witt exercised the option on his behalf. Both plaintiffs requested in their notices that the defendant communicate with them to agree on a closing date for the conveyance of the property or in the event that the defendant did not respond, title was to close on March 16, 1979. The defendant neither responded nor appeared on March 16, 1979.

This action for the specific performance of the option was then commenced. The defendant's answer, though denying the allegations of the complaint concerning the failure of the defendant to notify the plaintiffs of Boddy's death and the effect of the plaintiffs' exercise of the option, generally admitted the remaining allegations of the complaint with respect to the transactions between Witt and Boddy prior to their deaths. The defendant's answer, in addition, contained a counterclaim alleging unjust enrichment of the plaintiffs, upon the basis that the defendant had made improvements amounting to $250,000 on the property, and several defenses, one of which averred that the option agreement violated the rule against perpetuities by suspending the power of alienation.

The plaintiffs moved for summary judgment; the defendant cross-moved for summary judgment. The moving papers presented on behalf of both sides in general described the documents executed by Witt and Boddy. However, the plaintiffs also asserted that because the schedule for estate tax purposes filed with the Surrogate's Court by the defendant claimed the value of the property as $12,600 (since it was subject to the exercise of the option at that figure), the defendant was estopped from asserting the invalidity of the option. The defendant, however, produced an affidavit from a real estate appraiser who valued the property at $110,000 at the time of Boddy's death, and at

---

and trustees of the estate of Witt to declare void the option was bequeathed to the defendant.

$125,000 at the time of the appraisal on September 7, 1979, which, as the defendant contended, indicated a gross disparity between the value of the property and the price stipulated in the option.

## II

Special Term granted summary judgment in favor of the defendant. Relying on *Kowalski v Familia* (71 Misc 2d 287), the court held that though the option agreement did not violate the rule against perpetuities, nevertheless it was an unreasonable restraint on alienation, for the reasons that there was a substantial difference between the option price and the market value of the property, no compelling purpose justifying the enforcement of the option had been shown, and the option was of unlimited duration.

On appeal, the plaintiffs argue that the option was not a restraint on alienation. They contend that the option was for a fixed amount, determined by the two original parties to the option under the circumstances existing at that time, and that in fact the option's duration was not unlimited, but conditioned on the happening of the contingency either of Boddy's decision to sell the property during his lifetime or upon his death. Further, they urge that the increase in value of the property during the intervening years has no effect on plaintiffs' right to exercise the option. Further, they claim that *Kowalski (supra)* is distinguishable on its facts from this case.

On the other side, the defendant argues that the option imposes a restraint on alienation on the grounds stated by Special Term. Moreover, he contends that the option was actually unlimited in time, because there is no duty under the terms of the option on Boddy's successors in interest to notify Witt or his successors in interest of Boddy's death. The defendant also urges that plaintiffs have shown no compelling purpose to enforce the option, and that the fixed price, in the light of the present value of the property, constituted a practical destruction of the right of Boddy to sell the property during his lifetime, since Boddy would have no incentive to sell it.

## III

The rules against perpetuities and restraint on alienation are reflections of the public policy of the State. That public policy, once ingrained in the common law and now incorporated in statute (EPTL 9-1.1), declares society's interest in the free transfer of property, without restrictions by the living on the ownership of property by posterity (*Carrier v Carrier*, 226 NY 114, 122). It is needless in the context of this appeal to consider the involuted development of the rule against perpetuities under our statutory pattern (cf. *Chwatal v Schreiner*, 148 NY 683, 690; 1936 Report of NY Law Rev Comm, pp 502-505, 512-513), because, as Special Term found, the rule against perpetuities does not apply to the option agreement.

In a general sense, the rule against perpetuities limits the power of an owner to create future interests, whereas the rule against restraint on alienation prohibits the owner from creating provisions blocking his grantee from disposing of the property. More to the point, here the terms of the option do not extend beyond the period of lives in being and a term of 21 years (*Matter of City of New York* [*Upper N.Y. Bay*], 246 NY 1, 29-30). Under either contingency of the option, it must be exercised within the lifetime of Boddy or within 30 days after his death—both contingencies thus being within the permissible period of the statute (EPTL 9-1.1). We do not accept the defendant's construction of the option that there was no duty on him to notify the plaintiffs of Boddy's death, thereby, according to his argument, lengthening the exercise of the option possibly beyond the 21-year period provided by the statute. As we interpret the language of the option, the plaintiffs' time to exercise it began on "the receipt of notice of death", and we think it a reasonable conclusion that notification of death would be given by Boddy's heirs or successors in interest to Witt or his successors.

In contrast, the rule against restraints on alienation is not now codified,[3] but remains a doctrine controlled by de-

---

3. It is true that the State Constitution of 1846 (art I, § 14) contained a provision invalidating " 'other like restraints upon alienation, reserved in any

cisional law. It was early stated that where an estate was conveyed in fee simple, a condition forbidding alienation by the grantee was void. The reason for the rule was said to be that the ownership of the fee could not exist in one person while the ownership of the right of alienation existed in another. That statement, of course, embodies a conceptual difficulty; but the public policy in favor of facilitating the free transfer of property is undoubtedly a more substantial ground for the rule (see *De Peyster v Michael*, 6 NY 467, 492-494).

Whether an option conferring a pre-emptive right to purchase property violates the rule against restraints on alienation presents a question possessing a long history and providing considerable debate. At first, the right of pre-emption was held by the king for the purchase of goods and chattels from his subjects for the benefit of his household *(Garcia v Callender*, 125 NY 307, 310-311). Later, pre-emptive provisions were used as means to carry out commercial bargains and land contracts. Reasonable pre-emptive provisions are generally enforceable (Ann., 40 ALR3d 920, 931). Indeed, provisions granting the right to purchase are now commonly used in leases, in co-operatives and condominiums and in stock issued by closely held corporations (see, e.g., *Matter of Sipmeier*, 61 AD2d 798; *Chianese v Culley*, 397 F Supp 1344; *Allen v Biltmore Tissue Corp.*, 2 NY2d 534). In all of these instances, however, there exists a readily recognizable interest by the holder of the option in the subject matter. Independent options, i.e., one which is not part of an agreement or bargain governing a transaction or interrelated transactions, have a more uncertain validity (see Ann., 66 ALR3d 1294).

Here we are not dealing with an independent option, since the option is provided in a deed transferring ownership of land from Boddy to Witt. The Restatement of Property approves pre-emptive clauses in which it is provided that the owner shall not sell his land without offering to sell it to a designated person, either at a fixed price, or at a percentage of the price offered by another person, on the condition that the restraint is reasonable under the cir-

---

grant of land' " *(Matter of Mazzone*, 281 NY 139, 146) ; however, this provision was omitted in the Constitution of 1938.

cumstances. (Restatement, Property, §§ 406, 413.)[4] This view is supported by one scholarly text (Simes and Smith, The Law of Future Interests [2d ed], § 1154) and disputed by another (6 American Law of Property, § 26.66).

Special Term's determination rested largely on *Kowalski v Familia* (71 Misc 2d 287, *supra*). In that case the heirs of a grantor of a deed conveying land in 1934 sought to enforce a "first option" to repurchase it at a price of $2,000 at any time the grantee should offer it for sale. The grantee had died, and the defendants, his heirs, had previously given an option to the County of Orange to buy the land for $26,000, after having been informed by the county that it would condemn the land otherwise. Special Term held (p 293) that the option constituted a restraint on alienation, because there was a "great disparity in the option price and the property's market value, but also no compelling purpose justified its imposition or now its enforcement."[5] Thus, it will be observed that disparity in price was not the sole test applied by the court in *Kowalski*, but also whether the circumstances at the time of the option justified its imposition.

## IV

Our review of the record here persuades us that a trial is required of the issues, and that summary judgment should not have been granted. First, the facts surrounding the transactions out of which the option arose are not disentangled by the papers before us. Though it is clear that Boddy was operating the service station at the time of the execution of the option, his relationship to the land is not

---

4. The Restatement of Property in its comments (§ 406, pp 2406-2407) lists several factors to determine unreasonableness:

"1. the restraint is capricious;

"2. the restraint is imposed for spite or malice;

"3. the one imposing the restraint has no interest in land that is benefited by the enforcement of the restraint;

"4. the restraint is unlimited in duration;

"5. the number of persons to whom alienation is prohibited is large (see Comments *j* and *k*)."

5. As an alternative ground for not enforcing the option Special Term found that it had not been triggered because there was no offer of sale by the owners, but an involuntary taking by condemnation.

clear. Neither is Witt's relationship to Boddy clear—whether he was purchasing the land as an investment or as a friendly act to protect Boddy's interest. Moreover, the record is ambiguous whether Witt purchased the property from the town at a foreclosure sale or at an auction sale (presumably after the town had acquired the property following a foreclosure sale). The record is also silent with respect to the sale of the house—whether this transaction had been treated as essential to the original purchase of the land by Witt and his sale to Boddy, and was an inextricable part of the bargain between Boddy and Witt.

In addition, Witt's interest in the property subsequent to his sale to Boddy apparently continued, since he joined in both the original mortgage given to the bank and the additional mortgage given to the bank, though the latter occurred several years following the execution of the option agreement.

We do not think that disparity between the price prescribed by the option and the present market value of the property per se destroys the pre-emptive right of the plaintiffs. Assuming that the option agreement was an arm's length bargain struck by the parties, it is evident that Witt's investment could not be recovered by him within a readily ascertainable period for the option became operative only at Boddy's decision to sell the property or on his death. Both of these contingencies were out of Witt's control. In the meantime, assuming that Boddy had made no contribution to the original purchase of the property, Boddy enjoyed the use of the property and its income.

This case bears a remarkable resemblance to *Emerson v King* (118 NH 684). There Emerson sold a cottage and 10 acres in 1952; in the deed the grantees agreed that in the event they desired to convey the property, the grantor would have the option to repurchase the property for $5,000, or in any event within 60 days of the death of the survivor of the grantees. In 1955 the grantees purchased adjacent land, subject to an option for $3,000 under the same terms. The survivor of the grantees died in 1975. The Supreme Court of New Hampshire held the option enforceable, even though the property had increased in

value beyond the option price (see, also, *Tovrea v Umphress*, 27 Ariz App 513; *Smerchek v Hamilton*, 4 Kan App 2d 346; *Standard Reliance Ins. Co. v Schoenthal*, 171 Neb 490).

We recognize that since Boddy and Witt are deceased, proof of the circumstances surrounding the option may be difficult to obtain. But there may be other witnesses still available who can testify to the circumstances under which the option was executed. At least, the parties should have the opportunity to produce such evidence, so that the reasonableness of the option terms may be determined.

## V

The order should be modified so that the defendant's cross motion for summary judgment, as well as plaintiffs' motion for the same relief, is denied.

MOLLEN, P. J., TITONE and WEINSTEIN, JJ., concur.

Order of the Supreme Court, Westchester County, dated December 20, 1979, modified by deleting the second and third decretal paragraphs thereof and substituting therefor a provision denying defendant's cross motion for summary judgment, and the complaint is reinstated. As so modified, order affirmed, without costs or disbursements.