OPINION OF THE COURT
Hancock, Jr., J.
 Two issues are presented on this appeal from an order of the Appellate Division dismissing plaintiff’s claims seeking to enforce a right of first refusal: (1) whether New York’s rule against remote vesting (EPTL 9-1.1 [b]) is applicable to the *168 type of first refusal right involved here: one created in a deed conveying noncommercial, residential property between private parties; and (2) if so, whether the specific provision at issue violates the rule. We agree with the Appellate Division that the rule was intended to apply in a transaction of the type before us. Contrary to the holding below, however, we conclude that the particular first refusal right here does not contravene the rule. Accordingly, we reverse the order of the Appellate Division.
I
In 1977, Lilian T. Maier conveyed a 2.3-acre parcel of residential land to her nephew, plaintiff Robert C. Morrison. Maier retained the contiguous 30-acre parcel. The parcels were part of 38 acres of lakefront property on Balfour Lake which had been family owned since 1904. The deed created mutual rights of first refusal to purchase ("preemptive rights”) as follows:
"The party of the first part [Maier] and the party of the second part [Morrison] agree and covenant that during their life each shall have a right of first refusal to purchase the property conveyed and the property retained, respectively. The party of the first part shall have the right to meet, within sixty (60) days, any bona fide offer for the purchase of all or any part of the land herein conveyed and purchase the same. This right of first refusal is intended to bind the party of the second part, his heirs and assigns only during the life of Lilian Teresa Maier the party of the first part and those persons who directly take as a result of a gift by her or by her death. This right shall continue until the property is either conveyed or assigned by the donees or beneficiaries or until their death, whichever occurs first. The party of the second part shall have the right to meet, within sixty (60) days, any bona fide offer for the purchase of all or any part of the land retained and purchase the same. This right of refusal is intended to hind the party of the first part, her heirs and assigns, only during the life of Robert C. Morrison, the party of the second part and those persons who directly take as a result of a gift by him or by his death. This right shall continue until the property is either conveyed or assigned by the donees or beneficiaries or until their death, whichever occurs first.” (Emphasis supplied.)
*169 In 1979, Maier died, leaving the retained property to her sisters Elizabeth C. Brassel and defendants Mary T. Owens and Helen C. Whelehan as tenants in common. In 1984, the three sisters divided the property by partition. Each of the deeds effectuating the partition — signed by the sisters and Morrison — contained the following recognition of Morrison’s first refusal rights:
"The above described parcel is subject to a 'right of first refusal’ as set forth in the deed given by Lilian Teresa Maier to Robert C. Morrison * * *. Said deed is referred to for a more complete description of this right of first refusal.
"Robert C. Morrison hereby executed and acknowledged this deed for the purpose of consenting to this conveyance.”
In 1987, defendants Owens and Whelehan received an offer from defendants Roger and Drusilla Piper to purchase their part of the retained property. Morrison was not given the opportunity to exercise a preemptive right, and in March 1988 title to both parcels was transferred to the Pipers. Thereafter, in July 1988, plaintiff commenced this action seeking to enforce his right. Supreme Court denied his summary judgment motion on the ground that it was unclear whether, in 1984, plaintiff’s consent to the partition operated to terminate his right of first refusal. Supreme Court, however, went on to hold that the preemptive right violated the statute (EPTL 9-1.1 [b]). Upon plaintiff’s appeal, the Appellate Division modified, on the law, by granting summary judgment in favor of defendants, agreeing with Supreme Court that the first refusal right was invalid because it contravened the rule against remote vesting. This Court granted leave and we now reverse.
II
We agree with the Appellate Division that the rule against remote vesting generally applies to a first refusal right of the type in question here. This Court has recognized that the broad prohibition against remote vesting contained in the 1965 enactment of the rule (Real Property Law § 43 [L 1965, ch 670, § 1], now EPTL 9-1.1 [b]) covers independent options to purchase real property (see, Buffalo Seminary v McCarthy, 86 AD2d 435, 440-443, affd for reasons stated in parts I and II of opn at App Div [Hancock, Jr., J.] 58 NY2d 867). It is true that an option is different from a right of first refusal. Unlike a typical option to purchase property, a right of first refusal or a preemptive right does not, at the time it is given, include an *170 operative offer. The right of first refusal involves a future offer to be made if and when the owner decides to sell to a third party at an agreed price (see, LIN Broadcasting Corp. v Metromedia, Inc., 74 NY2d 54, 60-61).
But, notwithstanding these distinctions, the holder of a right of first refusal, like the holder of any option, has an interest in land which is to vest, if at all, sometime in the future (see, Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 164-166). Indeed, the right of first refusal effectively ripens into an option upon the happening of a contingency: the decision of the obligated party to accept a third-party’s offer for the property. There is no analytical or logical reason, therefore, why first refusal options or preemptive rights — any less than ordinary options — cannot result in the vesting of interests beyond the permissible period; indeed, we have noted that preemptive rights are ordinarily covered by the rule against remote vesting (see, Metropolitan Transp. Auth. v Bruken Realty Corp., supra, at 164-165; see, e.g., Witt v Disque, 79 AD2d 419, 424; see generally, Annotation, Pre-emptive Rights to Realty as Violation of Rule Against Perpetuities or Rule Concerning Restraints on Alienation, 40 ALR3d 920, 939-948).
In Bruken, however, the Court held that there are some situations where the application of EPTL 9-1.1 (b) to preemptive rights would not serve the purpose of the statute and could not have been contemplated. In that case, we held that the statutory prohibition was not intended to apply to preemptive rights in a "commercial and governmental transaction” where giving effect to the rights would serve the public interest (id., at 168). Bruken concerned a preemptive right covering certain freight yard property granted by the Metropolitan Transportation Authority to a national transportation corporation which already owned the air rights over the property. In holding that the rule against remote vesting did not apply, we observed that neither "lives in being” nor "twenty-one years” were time periods having relevance to commercial preemptive rights involving parties other than individuals (id., at 166). With respect to the provision at issue, we noted that the maximum productive use of the property could be permitted by reuniting the air and ground rights (id.) and that the transaction was a matter of public knowledge between a governmental authority and a transportation corporation, not between "private citizens whose interest[s] might never be discovered with the passage of time” (id., at 167).
*171 Plaintiff Morrison urges the Court to apply the limited Bruken exception here, arguing that preemptive rights affect the rule ¿gainst remote vesting "only marginally”. But plaintiff identifies no ground for extending the Bruken exception to private, noncommercial transactions between individuals in which there is no governmental or public interest. Where the parties to the transactions are individuals the time limitations on vesting in EPTL 9-1.1 (b) — i.e., "twenty-one years” and "lives in being” — have obvious relevance and no reason is suggested why they should not be fully applicable. To hold that the Bruken exception extends to the type of first refusal option employed in this residential transaction would transform the exception into the rule (see generally, Berg, LongTerm Options and the Rule Against Perpetuities, 37 Cal L Rev 1, 21-22; Leach, Perpetuities in a Nutshell, 51 Harv L Rev 638, 660; Simes and Smith, Future Interests §§ 1201-1221, 1224, at 88-105, 159 [2d ed 1956]).
Ill
We turn to the issue of whether the first refusal rights created in the deed in question violate the rule against remote vesting. We conclude that they do not. In determining whether a particular provision violates the rule we, of course, are bound by the special rule of construction which the Legislature has enacted to govern "with respect to any matter affecting the rule against perpetuities” (EPTL 9-1.3 [a]). The statute directs that "[u]nless a contrary intention appears” (EPTL 9-1.3 [a]), ”[i]t shall be presumed that the creator intended the estate to be valid” (EPTL 9-1.3 [b] [emphasis added]; see, Rohan, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.3, 1990 Cum Annual Pocket Part, at 244-245).
The language in the deed creating the preemptive rights is contained in the first sentence "[Maier] and [Morrison] agree and covenant that during their life each shall have a right of first refusal to purchase the property conveyed and the property retained, respectively” (emphasis supplied).[1] This language has an important limitation: the rights are to exist only during the lives of Morrison or Maier. In other words, two *172 measuring lives are identified in the grant.[2] Thus, the mutual rights of first refusal during the two measuring lives created in the first sentence are valid under the rule against remote vesting (EPTL 9-1.1 [b]).
Defendants argue that the language contained later in the deed enlarged the preemptive right created in the first sentence and that the right was thus rendered invalid under the rule. The lower courts agreed. But this construction overlooks a critical point. The first refusal provision has two distinct parts: (1) language creating the right itself in the first sentence (i.e., the parties covenant and agree "that during their life each shall have a right of first refusal” [emphasis added]); and (2) language in the remaining sentences imposing limitations and restrictions on who may exercise the right of first refusal created in the first sentence and when they may do so (i.e., the right "is intended to bind ** * * only during the life of [Morrison and his direct donees or beneficiaries]” and the "right shall continue until [direct donees or beneficiaries convey property or die] whichever occurs first” [emphasis added]). In these subsequent sentences, whenever the language alludes to the first refusal right, it identifies it as the right that already exists — i.e., the right created in the first sentence —by specifically referring to it as "[tjhis right of first refusal” (emphasis added). There are no words in these sentences granting or creating a different first refusal right or expanding the right created in the first sentence which, by its very terms, is limited to the life of Maier or Morrison. Unlike the language in the first sentence which creates the right ("during their life each shall have a right of first refusal” [emphasis added]), the subsequent sentences contain language which limits this right.
By simply reading the phrases "[t]his right of first refusal” and "[t]his right” when used in the succeeding sentences as meaning the right as originally created in the first sentence, any conflict between the first sentence and the remaining sentences is avoided and the parts are harmonized into one integrated structure which gives effect to the parties’ evident *173 purpose of narrowly circumscribing the group of persons permitted to exercise the right (see, Matter of Fabbri, 2 NY2d 236, 240-241). The clause, thus read, contains identical reciprocal provisions creating rights of first refusal which may be exercised during the lives of the parties (Maier or Morrison) by either party or, under tightly drawn limitations, by that party’s direct donees or beneficiaries.[3]
Contrary to defendants’ construction, the language following the first sentence does not extend the limited duration of the right which may be exercised only during Maier’s or Morrison’s life. Rather, the language restricts the group of persons who may exercise "[t]his right of first refusal” (created in the first sentence) to Maier or Morrison, themselves, or their direct donees or beneficiaries by death. Thus, persons who acquire the property in other ways — e.g., assignees, purchasers or remote, as opposed to direct, donees and beneficiaries — are not among those permitted to exercise. Moreover, the deed imposes even further restrictions on the narrow group of persons who are permitted to exercise "[t]his right” — the direct donees or beneficiaries of Maier or Morrison — for their right to exercise the first refusal option is carefully limited so as to be personal to them; it may only be exercised during their lives and may not be assigned or transferred to other parties.
By adopting the construction urged by defendants and concluding, as a consequence, that the resultant expanded right of first refusal violated EPTL 9-1.1 (b) the courts below did exactly what the statutory presumption was designed to prevent (see, EPTL 9-1.3 [b]). EPTL 9-1.3 (b) and the common-law rule of construction which it codifies embody the unexceptionable propositions that parties who make grants of real prop *174 erty interests presumably intend their grants to be effective and that reviewing courts should, if at all possible, avoid constructions which frustrate their intended purposes (see generally, Du Bois v Ray, 35 NY 162; Leach, Perpetuities, op. cit., at 657-659; Simes and Smith, op. cit, § 1288, at 227-229). There is nothing in the language of the deed — if read as a whole in an effort to discover the purpose sought to be achieved (see, Matter of Carmer, 71 NY2d 781, 785; Matter of Thall, 18 NY2d 186, 192) — suggesting that the parties had the intention of creating the invalid remote interests which defendants’ construction imputes to them. Thus, because no "contrary intention appears” (EPTL 9-1.3 [a]) we must give effect to the presumption that the parties "intended the [interest] to be valid” (EPTL 9-1.3 [b]; see, Sherman v Richmond Hose Co., 230 NY 462, 471 [an instrument should not be interpreted as violating the rule against remote vesting "unless (it) shows beyond mistake that such was the intent”]).
Finally, the circumstances surrounding the conveyance from Maier to her nephew, Morrison, are consistent with our holding that the grant of the right of first refusal was not violative of EPTL 9-1.1 (b). By the conveyance, an aunt was transferring part of her family owned lakeshore property to her nephew and would, as a result, own the property adjoining his. Under the first refusal provision, the right would have to be exercised, if at all, while one or the other of the parties was still living and possibly still an owner of his or her lakeshore property. Under these circumstances, the language limiting exercise of the right to direct donees and beneficiaries is readily understood as implementing the design of Maier and Morrison to restrict the right of exercise to immediate family members whom they would be likely to know and to prohibit exercise by strangers — e.g., purchasers or remote donees or beneficiaries. The construction we adopt gives effect to this design and, we conclude, to the parties’ intent to avoid the possibility of remote vesting in violation of EPTL 9-1.1 (b).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to that court for consideration of issues not reached on the appeal to that court.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.

. The nature of the rights are explained: each has the right "to meet, within sixty (60) days, any bona fide offer for purchase of all or any part of the land [to which the right applies] and purchase the same”.

. The rule against remote vesting recognizes that a future interest in land can be judged against two measuring lives (see generally, Simes and Smith, Future Interests § 1223, at 108-112 [2d ed 1956]). The rule simply provides that the "lives measuring the permissible period of vesting [not] be * * * so numerous as to make proof of their end unreasonably difficult” (see, EPTL 9-1.1 [b]). Here, the end of the two measuring lives — that of the aunt and her nephew — is easily susceptible of proof.

. The provision limiting to Morrison and his direct donees or beneficiaries the right (while either Maier or Morrison is still living) to exercise the first refusal option and bind Maier or her heirs and assigns is as follows: "This right of [first] refusal is intended to bind [Maier], her heirs and assigns, only during the life of Robert C. Morrison * * * and those persons who directly take as a result of a gift by him or by his death.” (Emphasis added.)
The provision in the next sentence places a further restriction on the right of the direct donees or beneficiaries of Morrison who are empowered to exercise the option and bind Maier and her heirs and assigns as long as either Maier or Morrison is still living. This provision reads: "This right [i.e., the right of Morrison’s direct donees or beneficiaries to exercise the option while either Maier or Morrison is still living] shall continue until the property is either conveyed or assigned by the donees or beneficiaries or until their death, whichever occurs first” (emphasis supplied).