Hancock, Jr., J.
(concurring). I agree with the Court’s two determinations (majority opn, at 645): (1) that the New York Rule against Perpetuities does not apply to invalidate Wildenstein’s preemptive and consignment rights; and, (2) that the rule against unreasonable restraints on alienation is not transgressed. I also agree with so much of the opinion as relates to the Court’s answer to the second question. In answering the first question, however, it is not necessary to resolve what, I believe, is a problematic issue: i.e., whether the settlement agreement comes within the Bruken exception to the general rule that EPTL 9-1.1 (b) applies to preemptive options (see, Morrison v Piper, 77 NY2d 165, 170-171; Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 164-167).
If it were assumed that the rule against remote vesting applied to the instrument before us, the answer to the question submitted would be the same. The problem is resolved by simply applying the special rule of construction which the Legislature has enacted to govern "with respect to any matter affecting the rule against perpetuities” (EPTL 9-1.3 [a]). The statute directs that "[u]nless a contrary intention appears” (EPTL 9-1.3 [a]), "[i]t shall be presumed that the creator intended the estate to be valid” (EPTL 9-1.3 [b] [emphasis added]; see, Morrison v Piper, supra, at 171-174; Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.3, at 543-544).
There is nothing in the agreement indicating that the parties had any thought that it would ever be enforced against anyone other than the Wallises or their respective executors, or at any time after the Wallises’ deaths except during the administration of their estates. Certainly, nothing suggests that the preemptive option and consignment clauses were intended to bind future generations or to be indefinite in duration. On the contrary, both the option and consignment provisions are, by their terms, to be enforced only against "Mr. Wallis, Mrs. Wallis, or their respective executors.” In this respect, it is significant that while the eighth paragraph makes the agreement binding on the Wallises’ executors, successors and assigns, the word "heirs” is omitted (compare, Buffalo Seminary v McCarthy, 86 AD2d 435, 445, affd 58 NY2d 867, for reasons stated in parts I and II of opn at App *654 Div, Hancock, Jr., J. [presence of the word "heirs” significant in determining that option was intended to be exercised by prospective owners indefinitely and, hence, was of indefinite duration]).
Finally, the sense and purpose of the settlement agreement, taken as a whole, leave no doubt that it relates not to remote contingencies but to events which were expected to occur, if at all, within the immediate future. Mr. Wallis was very elderly when the settlement was reached. The contingencies giving rise to Wildenstein’s option right and its consignment right are respectively: "If Mr. Wallis, Mrs. Wallis, or, upon their decease, the executors of their respective estates, receives an offer acceptable to him or her for the purchase of any painting” (agreement, para 3 [emphasis added]) and "If Mr. Wallis, Mrs. Wallis, or, upon their decease, the executors of their respective estates, determines to sell at auction any painting listed” (agreement, para 4 [emphasis added]). What the parties had in mind, it seems evident, were decisions or transactions pertaining to the sale of the paintings which would be made while the Wallises were still living or following their deaths during the period of administration of their estates (see, Morrison v Piper, supra, at 174 [over-all sense of instrument shows intent to restrict right to exercise option "to immediate family members whom (the parties) would be likely to know and to prohibit exercise by strangers — e.g., purchasers or remote donees or beneficiaries”]; compare, Buffalo Seminary v McCarthy, supra, at 445 [option agreement read as a whole indicated purpose of option on 20-foot strip was protection during indefinite future for prospective owners from placement of improvements on optioned parcel]).
In sum, the settlement agreement could not offend the rule against remote vesting, in any event. Assuming the applicability of the rule to a preemptive option clause of the type in question, the provision would be saved from invalidity by the presumption of validity in EPTL 9-1.3 (b). Any contingency involving the Wallises’ executors would be presumed to have been intended to occur, if at all, within 21 years from the effective date of the settlement agreement (EPTL 9-1.3 [d]).
Chief Judge Wachtler and Judges Simons, Kaye and Ti-tone concur with Judge Bellacosa; Judge Hancock, Jr., concurs in result in a separate opinion.
Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the *655 questions by this Court pursuant to section 500.17 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question number one answered in the negative, certified question number two answered in the negative, and certified questions number three and four not answered as unnecessary.