NELSON W. TAYLOR, III, AND PATRICIA v. TAYLOR, PLAINTIFFS
v. MARILYN MILLER, DEFENDANT

No. COA10-1535

(Filed 20 September 2011)

**Real Property—right of first refusal—valid and enforceable— insufficient evidence of reasonableness**

The trial court did not err in an action concerning defendant's right of first refusal on the sale of a piece of property by denying plaintiffs' motion for summary judgment but did err in entering a declaratory judgment in defendant's favor concluding that the right of first refusal was valid and enforceable. Neither party was entitled to summary judgment on the issue of the reasonableness of the right of first refusal because the Court of Appeals could not determine whether either party submitted sufficient evidence regarding the circumstances surrounding the agreement to the fixed option price to warrant judgment in their favor.

Appeal by plaintiffs from judgment entered 26 February 2010 and order entered 10 May 2010 by Judge W. Allen Cobb, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 25 April 2011.

*James W. Thompson, III, PLLC, by James W. Thompson, III, for plaintiffs-appellants.*

*Marilyn Miller, pro se, defendant-appellee.*

GEER, Judge.

Plaintiffs Nelson W. Taylor, III and his wife Patricia V. Taylor appeal from the trial court's decision denying their motion for summary judgment, but apparently granting summary judgment for defendant Marilyn Miller under Rule 56(c) (providing that summary judgment may be entered for "any party"). The trial court entered judgment upholding as valid and enforceable a provision in a deed that granted Ms. Miller, Mr. Taylor's former wife, a right of first refusal with respect to the property that was the subject of the deed. The Taylors contend that the provision, as a matter of law, constitutes an unreasonable restraint on alienation of property and is, as a result, invalid. We agree with the trial court that the Taylors were not entitled to summary judgment, but we disagree with the trial court's determination as a matter of law that the right of first refusal was valid and enforceable. Because there are genuine issues of material

fact as to whether the right of first refusal is reasonable, we reverse and remand.

## Facts

We first note that the transcript of the summary judgment hearing filed with the record indicates that the parties filed cross motions for summary judgment and that although the decision was captioned "Declaratory Judgment," the trial court was deciding the matter on summary judgment. It also appears that the parties each filed multiple affidavits in support of their positions and that some, although perhaps not all, of the pertinent documents were attached to those affidavits. The record, however, does not contain copies of the motions, the affidavits, or any other materials presented to the trial court. The following undisputed facts are drawn from the verified pleadings to the extent that the allegations are admitted, a single letter attached to the Taylors' reply to Ms. Miller's counterclaim, and the trial court's findings of fact that are not challenged on appeal.

Mr. Taylor and Ms. Miller married in 1982 and separated in March 1993. On 17 June 1994, Mr. Taylor and Ms. Miller executed a warranty deed to Mr. Taylor for a piece of property on Fisher Street in Morehead City, North Carolina, known as "Lot 3, Block or Square 90." The deed, as quoted by the trial court, contained the following provision regarding Ms. Miller's right to repurchase the land:

"If Grantee [Mr. Taylor] decides to sell Lot 3, Block or Square 90, as shown on the official map or plan of the Town of Morehead City of record in Map Book 1, Page 139, Carteret County Registry, he will communicate the full terms of any bona fide offer to the femme Grantor [Ms. Miller] by certified or registered mail, return receipt requested. She will then have ten (10) days from the date of the mailing [of] such notice in which to notify the Grantee herein that she will buy the property on the same terms and conditions as contained in the bona fide offer or for the sum of $41,500.00 plus the costs of all repairs and improvements (but not maintenance) made in/or on [sic] the premises from the date of this Deed to the date of the exercise of this right to repurchase by the femme Grantor herein. Grantee will keep careful records of all such repairs and improvements and will be paid only for those for which such records exist. If the femme Grantor does exercise her right under this provision, closing shall take place in Carteret County, North Carolina, within thirty (30) days of the mailing to Grantee above the notice by femme Grantor. If the femme

Grantor does not keep the Grantee herein notified of a mailing address by which she can be reached, this right given in this paragraph to her shall terminate. If the femme Grantor herein does not exercise her right given in this paragraph within ten (10) days of the mailing of the notice to her as provided herein, her rights hereunder will terminate."

(Emphasis omitted.)

In October 2002, Mr. Taylor conveyed an interest in the property to himself and his present wife, Patricia, in order to create a tenancy by the entireties. Seven years later, on 10 June 2009, Mr. Taylor wrote a letter to Ms. Miller stating, "As you will remember, there is in the separation agreement that we signed a provision that in the event that I want to sell the house on Fisher Street or the property upon which it sits you will have the right to buy it back at the amount that I paid you for it plus the costs of any improvements." According to Mr. Taylor's letter, the house was badly in need of repairs, but it was impossible for him to borrow any money on the property for the purpose of making repairs or improvements. He asked Ms. Miller to "agree to forego any rights under that provision of the separation agreement." Ms. Miller did not respond to this letter.

Subsequently, on 30 June 2009, Mr. Taylor wrote Ms. Miller another letter that explained, as quoted by the trial court: " 'Enclosed you will find a Non-Warranty Deed from you to Bayard ([Mr. Taylor's] son). He has been living in the house on Fisher Street for some years. It is my intention to convey this property to him. The house is beyond the point where it would be worthwhile to spend money on it to try to refurbish it. Therefore, the plan is to raze the house and build something new on it.' " (Emphasis omitted.) The letter further stated: " 'I do not believe the provision in the separation agreement has any validity. Your execution of the enclosed non-warranty deed will clear the record.' "

Ms. Miller did not respond to this letter either. Instead, Mr. Taylor received a letter, dated 2 July 2009, from Ms. Miller's attorney, which stated, as quoted by the trial court: " 'I am hereby invoking the provision that allows my client to purchase from you said property for the sum of Forty-One Thousand Five Hundred Dollars ($41,500.00). Marilyn Miller is exercising her right under the provisions to purchase the property.' "

Five days later, on 7 July 2009, Mr. and Mrs. Taylor filed a verified complaint seeking a declaration of rights under the deed and a deter-

mination whether the right of first refusal provision was a valid restraint on alienation of property. Ms. Miller filed a verified answer and counterclaim seeking an order (1) upholding the right of first refusal and (2) directing the Taylors to specifically perform their obligations under it by conveying the property to Ms. Miller for $41,500.00.

At some point, the parties apparently filed cross motions for summary judgment.[1] At the hearing on 22 February 2010, the trial court considered the parties' various affidavits and other materials, as well as the arguments presented by Ms. Miller, appearing *pro se*, and by Mr. Taylor, who is an attorney, acting as the Taylors' counsel. On 26 February 2010, the trial court entered a decision entitled "Declaratory Judgment" that concluded, after 11 findings of fact, that the Taylors were "not entitled to a declaration that the [right of first refusal] provision is invalid." The trial court then included in the decretal portion of the judgment a determination that the right of first refusal as set forth in the deed between the parties "is VALID AND ENFORCEABLE." The court ordered that Ms. Miller's counterclaim for specific performance of the Taylors' obligations under the right of first refusal would be calendared for disposition at a later date.

On 8 March 2010, the Taylors filed a motion to amend the judgment. The Taylors asked the trial court to remove from the declaratory judgment all references to the parties' contentions, or, in the alternative, to amend the findings of fact concerning the parties' contentions. The Taylors also filed a motion to dismiss Ms. Miller's counterclaim.

On 10 May 2010, the trial court entered an order denying the Taylors' motion to amend the declaratory judgment and allowing their motion to dismiss Ms. Miller's counterclaim without prejudice to being refiled once Ms. Miller's cause of action was ripe. The court also stated in this order that "[t]he motion for Summary Judgment filed by the Defendant is not ruled upon as her counterclaim is dismissed." The Taylors timely appealed from the declaratory judgment and the order denying their motion to amend the declaratory judgment.

## Discussion

The Taylors contend that the deed's right of first refusal is, on its face, an unreasonable restraint on alienation and that the trial court, therefore, erred in denying their motion for summary judgment and entering a declaratory judgment that the provision is valid and

---

1. The record does not specifically set out the basis for Ms. Miller's motion for summary judgment although it appears to have been seeking summary judgment on Ms. Miller's counterclaim.

TAYLOR v. MILLER

[215 N.C. App. 558 (2011)]

enforceable. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c).

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* All inferences of fact must be drawn against the movant and in favor of the party opposing the motion. *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 476, 624 S.E.2d 380, 383 (2006). We review a trial court's grant of summary judgment de novo. *Coastal Plains Utils., Inc. v. New Hanover Cnty.*, 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004).

A right of first refusal " 'requires that, before the property conveyed may be sold to another party, it must first be offered to the conveyor or his heirs, or to some specially designated person.' " *Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610 (1980) (quoting 6 *American Law of Property* § 26.64 at 506-07 (1952)). In *Smith*, our Supreme Court established that a right of first refusal clause is not void per se and will be enforced if reasonable. *Id.*

The *Smith* Court considered the validity of a restrictive covenant requiring the defendant land owners (the Mitchells) to offer the plaintiff (Smith) the option to repurchase specified property at a price no higher than the lowest price the Mitchells were willing to accept from any other purchaser. *Id.* at 59-60, 269 S.E.2d at 610. The Court rejected the defendants' argument that a right of first refusal, a "preemptive right," is always an unreasonable restraint on alienation and held that "[c]ertain such restrictions on alienability, if defined as preemptive rights and if carefully limited in duration and price, are not void *per se* and will be enforced if reasonable." *Id.* at 61, 269 S.E.2d at 610.

The Court explained that even though a preemptive right is a restraint on alienability, which is generally disfavored, "the minimal interference with alienability presented by a preemptive right does little violence to the primary reason for prohibiting restraints on alienation in the first place, and should not be *per se* void." *Id.* at 63, 269 S.E.2d at 611. Further, "[j]ust as the commercial device of the

option is upheld, if it is reasonable, so too the provisions of a preemptive right should be upheld if reasonable, particularly here where the preemptive right appears to be part of a commercial exchange, bargained for at arm's length." *Id.*, 269 S.E.2d at 612. Finally, the Court noted that a preemptive right is a useful tool for planned and orderly real estate development. *Id.* The Court concluded that "[t]o hold such a provision void *per se* [would be] an unnecessary limiting of the right of a developer and is in contradiction to a general trend to uphold restrictive covenants running with the land if those covenants are reasonable." *Id.* at 64, 269 S.E.2d at 612.

The Court then turned to the question of how to determine whether a right of first refusal is unreasonable, pointing out that there are two primary considerations in determining the reasonableness of a preemptive right: "[1] the duration of the right and [2] the provisions it makes for determining the price of exercising the right." *Id.* at 65, 269 S.E.2d at 613. The Court then adopted the following general rule:

> We believe the better rule is to limit the duration of the right to a period within the rule against perpetuities and thus avoid lengthy litigation over what is or is not a reasonable time within the facts of any given case. We further agree with the authorities that a reasonable price provision in a preemptive right is one which somehow links the price to the fair market value of the land, or to the price the seller is willing to accept from third parties.

*Id.* at 66, 269 S.E.2d at 613.

The Taylors rely on *Smith* to argue that the right of first refusal in this case is unenforceable because it fails to satisfy the second *Smith* prong: the reasonable price provision. According to the Taylors, the fact that Ms. Miller has the option to pay a fixed price, $41,500.00, for the property means that the price is not actually linked to the fair market value or to the price the Taylors are willing to accept from a third party.

In making this argument, however, the Taylors overlook the Supreme Court's subsequently decided opinion in *Texaco, Inc. v. Creel*, 310 N.C. 695, 314 S.E.2d 506 (1984), in which the Court considered whether Texaco, as the defendants' lessee, was entitled to specific performance of a fixed price option provision in a lease.[2] The

---

2. In *Smith*, 301 N.C. at 63, 269 S.E.2d at 611, the Supreme Court explained that "the reasons courts uphold the nearest analog to preemptive rights, the option, are equally applicable to preemptive provisions."

lease, agreed upon 35 years earlier in 1949, provided that Texaco had an option to purchase the leased premises for either the fixed price of $50,000.00 or the same price as a bona fide third-party offer acceptable to the lessor. *Id.* at 697, 314 S.E.2d at 507. That provision is materially indistinguishable from the right of first refusal in this case.

The Supreme Court held that Texaco was entitled to summary judgment on its specific performance claim despite the defendants' claim that enforcing the option " 'would place a ceiling of $50,000.00 on the price which the lessor could obtain for the property during the entire thirty years that the lease and its renewals were in effect thus depriving lessor of all appreciation in value.' " *Id.* at 700, 314 S.E.2d at 509. The Court explained:

> We recognize the result of this interpretation of the lease is harsh if it deprives defendants of the appreciated value of their property which exceeds the fixed price. But, as stated earlier, in construing a contract we look not only at its language, but also at the situation of the parties *at the time the contract was made.* In 1949 it was unlikely that either party anticipated the dramatic increases in property values on Franklin Street in Chapel Hill which have occurred in the intervening years.

*Id.* at 704, 314 S.E.2d at 511.

The Court emphasized that the circumstances showed the parties had bargained for the fixed price option and determined it to be a reasonable figure at the time the lease was agreed upon:

> It is also apparent from the lease that Texaco was concerned about a third party buying the property after it had improved the property and established a business. The lessors were most likely concerned about being in a position to induce lessee to buy the property at a price more advantageous than the fixed price option, should they no longer wish to have their asset tied up in a long-term lease. The first refusal provision thus served the purposes of both parties. *In addition, the actual price set in the fixed price option was obviously a bargained-for sum.* It is apparent from [two cases in other jurisdictions] that Texaco did not have a uniform price it insisted upon in the fixed price option. Given that the rent on the property was only $100 per month for the entire term of the lease, it is probable that the lessors viewed the $50,000 price as being reasonable even at the end of the lease term.

*Id.* at 704-05, 314 S.E.2d at 511 (emphasis added). *See also Pure Oil Co. of the Carolinas v. Baars,* 224 N.C. 612, 615, 31 S.E.2d 854, 856 (1944) (relied upon in *Smith,* 301 N.C. at 63, 269 S.E.2d at 612 and holding that when "option is an integral part of the transaction," then "it would be inequitable to allow the defendants to claim the property under deed from the plaintiff and at the same time annul the essential terms of its acquisition").

Thus, notwithstanding the language in *Smith, Texaco* established that an option—and, therefore, a right of first refusal—providing for a fixed price will not necessarily be invalid. Rather, the courts must look to the circumstances existing at the time the contract was made to determine whether the price is reasonable. In the event that the circumstances are disputed, then genuine issues of material fact exist that preclude summary judgment. *See Witt v. Disque,* 79 A.D.2d 419, 426-27, 436 N.Y.S.2d 890, 895 (1981) (in reversing trial court's summary judgment order that concluded fixed-price option to repurchase was void as unreasonable restraint on alienation, holding (1) that reasonableness of option terms had to be determined by all circumstances at time of creation of option and (2) that bare documents relating to option were not sufficient to assess reasonableness of price because they did not establish facts relating to nature of relationship between parties, precise nature of transactions, relationship of parties to property at time of execution of option, or reason behind option terms).

Applying *Texaco* and the reasoning of *Witt,* which we find persuasive, we conclude that the trial court, in this case, did not err in denying the Taylors' motion for summary judgment, but it did err in entering a declaratory judgment in Ms. Miller's favor concluding that the right of first refusal is valid and enforceable. The record contains a letter from Mr. Taylor to Ms. Miller, in which he stated that their separation agreement contained a provision that if he wished to sell the house, Ms. Miller would have the right to buy it back for the amount that Mr. Taylor had paid plus the costs of any improvements. Similar to the situation in *Texaco,* if the fixed price option was "a bargained-for sum" arising out of negotiations relating to the parties' division of property during a divorce and relating to the parties' respective interests in the property, then those circumstances could suggest that the fixed-price right of first refusal was reasonable. 310 N.C. at 705, 314 S.E.2d at 511.

To hold, as the Taylors urge, that the right of first refusal is invalid could, in this context, risk disturbing the balance of interests

struck by the parties in their divorce negotiations. We note that *Smith*, in discussing why a preemptive right should not be per se void, relied upon not only the minimal impact of such a right on alienability, but also on the need to enforce arms-length negotiations and the importance of such rights in certain contexts, such as real estate development. 301 N.C. at 64, 269 S.E.2d at 612. We believe that just as a right of first refusal may be an important tool for developers, a fixed-price right of first refusal may be an important tool for spouses and courts in deciding how to divide up property.

We are not persuaded by the Taylors' attempt to distinguish *Texaco*. The Taylors essentially argue that the circumstances of *Texaco* are different from those in this case, but they have not addressed *Texaco*'s holding that makes relevant the circumstances at the time the parties entered into the contract including the option or right of first refusal. They did not argue to the trial court, and the trial court did not address, whether the circumstances surrounding the deed were such that the right of first refusal was invalid as a matter of law. Moreover, we cannot make that determination on appeal because the Taylors did not include the evidence submitted to the trial court. Similar to *Witt*, the few documents before this Court and the trial court's findings of fact are not sufficient to resolve, on summary judgment, the reasonableness of the price.

Ms. Miller, seeking to uphold the trial court's entry of a declaratory judgment in her favor, contends on appeal that her ability to re-acquire the property was vital to her and that the repurchase provision was an integral part of the transaction when she transferred the property to Mr. Taylor, which was in turn part of the parties' property settlement. Although the transcript of the summary judgment hearing suggests that the parties may have submitted multiple affidavits and some documentation, those evidentiary materials, which may have supported Ms. Miller's arguments, are not part of the record before this Court. Ms. Miller had a responsibility to ensure that any materials necessary for her arguments on appeal were included in the record on appeal. *See Fleming Produce Corp. v. Covington Diesel, Inc.*, 21 N.C. App. 313, 315, 204 S.E.2d 232, 234 (1974) ("While an appellant has the primary responsibility for the preparation of a record on appeal, an appellee has the responsibility of ascertaining that the record clearly sets forth things favorable to him that the appellate court is called upon to review.").

TAYLOR v. MILLER

[215 N.C. App. 558 (2011)]

Ms. Miller argues, however, that the burden was on the Taylors to prove the unreasonableness of the provision and complains that the Taylors "would have this Court ignore the circumstances behind the creation of the buy-back provision in the deed he prepared to [sic] himself." In doing so, she overlooks the fact that in order for the trial court to enter judgment in her favor, as it did, she bore the burden of showing that no genuine issue of fact existed regarding whether the right of first refusal was valid and enforceable and that she was entitled to judgment as a matter of law.

Because we cannot determine on appeal whether either party submitted sufficient evidence regarding the circumstances surrounding the agreement to the fixed option price to warrant judgment in their favor, we hold that neither party was entitled to summary judgment on the issue of the reasonableness of the right of first refusal. *See Johnson v. News & Observer Publ'g Co.*, 167 N.C. App. 86, 89, 604 S.E.2d 344, 346-47 (2004) ("As we conclude that the evidence is susceptible to more than one inference, we hold that summary judgment was not appropriate for either party . . . ."); *Grundey v. Clark Transfer Co.*, 42 N.C. App. 308, 312, 256 S.E.2d 732, 735 (1979) ("Since there is an issue as to this material fact, summary judgment for either party is not proper.").

The trial court, therefore, properly denied the Taylors' motion for summary judgment, but it erred when, in deciding the Taylors' summary judgment motion, it entered judgment in Ms. Miller's favor. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Because of our disposition of this appeal, we need not address the Taylors' remaining argument on appeal regarding the denial of their motion to amend the judgment.

Reversed and remanded.

Chief Judge MARTIN and Judge ELMORE concur.